Jerry A. BEECK and Judy A. Beeck, Plaintiffs,

v.

AQUASLIDE 'N' DIVE CORPORATION, Defendant.

Civ. No. 73-232-2.

United States District Court, S. D. Iowa, C. D.

June 12, 1975.

John A. McClintock, Hansen, Wheatcraft & McClintock, and Kent M. Forney, Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, Iowa, for plaintiffs.

Paul F. Ahlers, James E. Cooney, Robert G. Allbee, Ahlers, Cooney, Dorweiler, Allbee, Haynie & Smith, Des Moines, Iowa, for defendant.

## ORDER

HANSON, Chief Judge.

The Court addresses this Order to an application by defendant Aquaslide 'N' Dive Corporation for leave to amend its answer. Said application was filed on February 26, 1975. Plaintiffs filed a resistance to the application on March 4, 1975. Both the application and resistance have been amended, and the Court has been provided with briefs on the issue. A hearing was held in this matter on May 8, 1975. Certain depositions, interrogatories and exhibits have also been presented to the Court.

This cause of action was commenced on October 15, 1973, as a result of injuries sustained by Jerry A. Beeck on July 15, 1972. Plaintiffs are Jerry A. Beeck and his wife, Judy. Named as the sole defendant is the Aquaslide 'N' Dive Corporation, an entity which designs, manufactures and sells various slides for recreational use around swimming pools. Aquaslide is a family corporation owned by a husband and wife who reside in Brownsville, Texas.

The complaint asserts that Jerry Beeck suffered severe personal injuries while using an Aquaslide manufactured by the defendant which had been installed at a swimming pool in Davenport, Iowa. Monetary damages of $1,725,000 are sought by this plaintiff, based on theories of negligence, products liability and implied warranty. Judy Beeck seeks $500,000 for loss of consortium and. services based upon the same legal theories.

Defendant Aquaslide 'N' Dive Corporation filed its answer to plaintiff's complaint on December 12, 1973. Said answer admitted that the defendant manufactured the "Aquaslide" which was sold to the Kimberly Village Home

Owners Association in Davenport, Iowa and involved in Jerry Beeck's accident.

The controversy currently before the Court involves defendant's application for leave to amend its answer, filed on February 26, 1975. Defendant asserts that on February 5, 1975, it first discovered that the slide in question "was not one of its own manufacture, sale or distribution." Accordingly, it seeks to amend its answer, substituting denials for its prior admissions of manufacture, design and sale. Plaintiffs have resisted the application most strenuously, arguing that the two-year personal injury limitations period of § 614.1(2) of the Iowa Code has run, and hence that permitting the amendment will fatally prejudice their lawsuit.

■ Rule 15(a) of the Federal Rules of Civil Procedure provides in pertinent part that " . . . a party may amend his pleading only by leave of court . . leave shall be freely given when justice so requires." As stated by Professor Moore:

> Recognizing that the entire spirit of the rules is to the effect that controversies shall be decided on the merits, the courts have not been hesitant to allow amendments for the purpose of presenting the real issues of the case where the moving party has not been guilty of bad faith and is not acting for the purpose of delay, the opposing party will not be unduly prejudiced, and the trial of the issues will not be unduly delayed.

3 J. Moore, Federal Practice, ¶ 15.08[2] at 874–75.

Guided by the above-mentioned factors, the decision of whether to permit or deny the amendment lies within the discretion of the trial court. Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962). As the instant controversy has been presented to this Court, it appears that two inquiries are essential to a proper exercise of that discretion:

1. Has the defendant acted in bad faith;

2. Will the plaintiffs be unduly prejudiced if the amendment is allowed.

An outline of the facts surrounding defendant's admission and denial is essential to a consideration of both the issues of bad faith and prejudice.

The incident in question arose out of a company social gathering sponsored by Jerry Beeck's employer, Harker Wholesale Meats, Inc., on July 15, 1972. The premises and pool were owned by the Kimberly Village Homes Association of Davenport, Iowa. Soon after the accident, investigations were undertaken by representatives of the separate insurors of Harker and Kimberly Village. These initial investigations resulted in a letter being sent by Roger Bonynge, representing Kimberly's insuror, to the defendant. The letter is dated October 31, 1972, and advises defendant that "one of your Queen Model #Q–3D slides" was involved in the Beeck accident. This notification was forwarded by the defendant to its insuror. It constituted defendant's first awareness of the Beeck claim.

As reflected in defendant's Exhibit A, as of September 28, 1973, defendant's insuror was of the opinion that the "Aquaslide in question was definitely manufactured by our insured." Plaintiff's complaint, filed two weeks later, reinforced this assertion, referring to a "Queen Model Q–3D water slide." No information to the contrary came to defendant's attention prior to the time for answering the complaint, and on December 12, 1973 defendant admitted that it "designed, manufactured, assembled and sold" the slide in question. At the time this representation was made, it was consistent with the conclusions of investigators for three different insurance companies—those representing Harker, Kimberly and the defendant. No one yet involved had questioned de-

fendant's role as manufacturer of the product.

On February 5, 1975 the president and chief executive officer of the defendant, Carl Meyer, came to Iowa for the taking of his deposition. He made an on-site inspection of the slide on that day, and determined that it was not a product of the defendant. This discovery came some six and one-half months after the running of Iowa's two-year statute of limitations for personal injury claims. Defendant's application for leave to amend was filed soon thereafter.

While the parties have endeavored to fully enlighten the Court as to the circumstances surrounding the pending application, the Court's disposition of the motion must be affected as much by what it does not know as by what it does. Specifically, to this date the parties disagree over the question of whether the defendant actually manufactured the slide. The uncertain state of the facts as to defendant's true role will necessarily handicap the Court in reaching definitive conclusions as to bad faith and prejudice. Certain facts pertinent to this narrow issue appear to be beyond dispute, however. Kimberly Village did order an Aquaslide product from one George Boldt in 1971. Boldt was a local distributor handling defendant's products. The order was forwarded by Boldt to the Sentry Pool & Chemical Supply Co., in Rock Island, Illinois. Sentry forwarded the order to one Purity Swimming Pool Supply (or Purity Manufacturing), in Hammond, Indiana. The slide was then delivered by truck from a Purity warehouse to Kimberly Village. It was installed by Kimberly employees. Approximately four years later, upon Carl Meyer's visual inspection, the slide then present at the pool was declared not to have been made by the defendant.

To date, the Court has not been informed of any further investigations corroborating or disputing the on-site identification made by Mr. Meyer. (Mr. Meyer, the president and chief executive officer of the defendant, also designs its products.) Further, no information has been presented to the Court regarding the likelihood of a slide mix-up by either the Sentry or Purity companies. An Aquaslide was ordered; a product defendant's president declares not to be an Aquaslide was installed at the pool. The slide presently installed is apparently devoid of identifying marks.

From this state of the record, the Court now considers the issue of bad faith on the part of the defendant. While numerous material matters are clearly unresolved at this point, there is no dispute that as of the filing of this lawsuit in October of 1973, investigators on behalf of three separate insurance carriers had concluded that the non-labeled fiberglass slide at the Kimberly pool was manufactured by the defendant. No contention has been made by anyone that the defendant influenced this possibly erroneous conclusion. The momentum of the case gathered from this initial identity, continuing until Mr. Meyer's February 5, 1975 declaration. That declaration is contested by the plaintiffs, and to date the true identity of the slide is unknown. Defendant's motion forces the Court to decide whether the role of the defendant as manufacturer of the slide will be an issue of fact for the jury to determine, or whether the defendant will be held to its prior admission.

In terms of the bad faith issue, the Court cannot conclude that "the defendant is responsible for creating the situation" of alleged misidentification in 1972 and 1973. See Bratt v. Bethlehem Steel Co., 30 F.R.D. 365, 366 (E.D.Pa.1962). At the time defendant's answer was filed, three insurance companies had satisfied themselves as to the manufacturer of the unlabeled slide. The reasons for this unanimity are not disclosed by the record, and the Court will not speculate as to them. To the extent the record reveals one thing clearly, it is this:

the matter of determining the true manufacturer of the slide is not an easy task, and the issue is still unresolved. All indications now are that the issue will be a factual question for a jury. In light of defendant's nonparticipation in the original "misidentification," the Court deems that the defendant has not acted in such bad faith as to be precluded from contesting the issue of manufacture at trial. To the extent that "blame" is to be spread regarding the original identification, the record indicates that it should be shared equally.

█ The factual uncertainty of the record is equally applicable to plaintiffs' arguments of prejudice in the event the amendment is allowed. Plaintiffs assert that since this amendment was sought some six months after the running of Iowa's two-year statute of limitations, the resulting prejudice will be irreparable. This Court acknowledges that prejudice to the plaintiffs can be viewed as "the crucial factor" in considering the amendment. *See* Howey v. United States, 481 F.2d 1187, 1190 (9th Cir. 1973). However, because the true facts regarding the slide are yet unknown, any conclusion as to prejudice would be highly speculative. As such, the alleged prejudice is an insufficient basis on which to deny the amendment.

█ Plaintiffs' prejudice argument hinges on this premise: that if the amendment is allowed, all chances of recovery are lost. The facts presented to date simply do not support this assertion.

First, allowing the amendment will not sound the "death knell" of the litigation. It merely will allow the defendant to contest the factual issue of its manufacturing the slide. As far as the Court can discern, this matter *is* a disputed factual issue. To deny to the defendant the opportunity to contest it would in itself be a comparable prejudice.[1] Moreover, plaintiff's argument assumes that the jury will decide in the defendant's favor on this issue. This Court simply cannot accept such an assumption.

Secondly, plaintiffs may be able to sue other parties as a result of the substituting of a "counterfeit" slide for the Aquaslide, if indeed this occurred. Again, the Court is handicapped by an unclear record on this issue. If, in fact, the slide in question is not an Aquaslide, the replacement entered the picture somewhere along the Boldt to Sentry, Sentry to Purity, Purity to Kimberly Village chain of distribution. Depending upon the circumstances of its entry, a cause of action sounding in fraud or contract might lie. If so, the applicable statute of limitations period would not have run. Further, as defendant points out, the doctrine of equitable estoppel might possibly preclude another defendant from asserting the two-year statute as a defense.

It must be stressed, of course, that the Court's ideas in this regard are pure speculation. Since the true facts are unclear, however, any arguments based on prejudice reduce themselves to such conjecture. Under these circumstances, the Court deems that the possible prejudice to the plaintiffs is an insufficient basis on which to deny the proposed amendment.

As stated by the United States Supreme Court in Foman v. Davis, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed. 2d 222 (1962):

Rule 15(a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded.

---

1. *Cf.* Coopersmith Bros., Inc., v. Stefko Boulevard Shopping Center, Inc., 30 F.R.D. 1, 2 (E.D.Pa.1962), where the court took into consideration prejudice to the moving party if the amendment was denied. *See also* Mayerson v. Washington Manufacturing Co., 58 F.R.D. 377, 381 (E.D.Pa.1972).

**416**

Under the circumstances of this case, justice would not be served by denying to the defendant the opportunity to contest at trial its role concerning the "Aquaslide." Neither the consideration of bad faith nor of prejudice to the plaintiffs is so compelling as to deny the amendment. While the evidence shows that the defendant and its insuror might have been more diligent in their initial investigations, the full circumstances of the case do not dictate that they be denied the opportunity to raise the issue of the slide's true origins at trial.

Accordingly, it is ordered that defendant's application for leave to amend its answer is granted.