**Cletus W. SKIPPER, Jr., Plaintiff,**

v.

**UNITED STATES FIDELITY AND GUARANTY COMPANY, Defendant.**

**Civ. A. No. 77–1234.**

United States District Court, D. South Carolina, Columbia Division.

Feb. 27, 1978.

J. Franklin Hartman, II, Columbia, S. C., for plaintiff.

James L. Bruner, Belser, Baker, Belser, Barwick & Toal, Columbia, S. C., for defendant.

### ORDER ON DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

HEMPHILL, District Judge.

By motion filed December 8, 1977, defendant seeks summary judgment by this court. Defendant contends there is no genuine issue as to any material fact, and, in addition, that plaintiff seeks damages which are so speculative as to fail as a proper basis for recovery, citing *Whitman v. Seaboard Airline Railway*, 107 S.C. 200, 92 S.E. 861 (1917), and *Ransome v. Mimms*, 320

F.Supp. 1110 (D.C.1970). Under *Tompkins v. Erie R. Co.*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938), the substantive law to be applied is that of South Carolina where the alleged cause of action arose. We employ here a brief discussion of the pleadings and evidence in the file insofar as they reveal matter crucial to this decision.

By verified complaint, initially lodged in the Court of Common Pleas for Richland County, S.C., plaintiff instituted this action for fraud (removed to this court July 1, 1977). The alleged basis for suit is the action of defendant in relation to a claim plaintiff insists he has against a Dr. R. L. Skinner, of Florence, S.C. Plaintiff states that on April 9, 1971, he cut himself while examining a hunting knife, and, soon thereafter, reported to McLeod Infirmary at Florence, where his wound was treated and sutured. He experienced subsequent and continuing pain, finally resulting in his reporting to the Moore Clinic (Orthopaedics and Traumotology) on July 19, 1971.

The evidence is not clear as to exactly when the plaintiff realized that his hand would not get well.[1] The record does reveal[2] that surgery was performed, on July 27, 1971, and that "patient faced the procedure well." He was discharged on July 28, 1971. He had to return for other treatments.

The genesis of plaintiff's complaint rests on a letter that plaintiff wrote defendant's insured, Dr. Skinner, on November 16, 1976, advising Dr. Skinner[3] that plaintiff was contemplating litigation.

On December 21, 1976, defendant's claims Supervisor-Adjuster, Alton S. Parker of the Florence Office of defendant, wrote to plaintiff's counsel:

Dear Mr. Hartman:

We are in receipt of your letter addressed to Dr. R. L. Skinner in reference to the above client. We have confirmed coverage, and at this time are conducting our investigation. As soon as we complete our investigation, we will advise our position.[4]

And, on February 4, 1977, Parker wrote to Hartman:

In reference to your letter of February 1, 1977 we have confirmed coverage but have not concluded our investigation. As soon as we have all the necessary documentation, we will advise you of our position.

On May 13, 1977, Parker wrote to Hartman:

We are in receipt of yours dated 5/12/77. As stated to you in our telephone conversation, we denied the claim because of no liability on the part of our

---

1. Dr. Herbert B. Niestat, in his diagnosis of July 19, 1971, writes:

"This 22-year old University of South Carolina student states that about three months ago he sustained a laceration just proximal to the volar DIP crease of his left long finger with a hunting knife. He was seen and the laceration was sutured by Dr. Skinner; however, after this he developed some difficulty with flexion at the discal joint and was seen by Dr. Mason in Florence. As he is attending school here in Columbia, Dr. Mason has referred him to us for further evaluation and care * * *. I believe this was an injury of the flexor digitorem profundes. Repair will probably entail flexor tendon graft in this case. We have made arrangements to bring him in next week for surgery. I have explained to him the possibility of putting in a laxtic tubing to make a good receptable tunnel for the graft and going back six weeks later to place the graft, if I think this is necessary at the time of surgery."

2. Certain exhibits are attached to the deposition of plaintiff taken at 10:00 a. m. Monday,

November 14, 1977, at the law office of Belser, Baker, Belser, Barwick and Toal in Columbia.

3. Copy of the letter, attached to the complaint, is an exhibit and reads as follows:

"Twenty-two year old man, at the time of the operation, April 8, 1971, had a laceration of the left long finger. When you repaired the finger, apparently, the tendon was not sewn up as indicated by Dr. Niestat's report.

"As a matter of fact, Dr. Niestat had to insert a solastic rod and Mr. Skipper was placed back in the hospital for a tendon graft.

"Since then, recovery has not been satisfactory, and moreover, his finger is still crooked, limited in movement and gives him pain.

&ast; &ast; &ast; &ast; &ast; &ast;

"Mr. Skipper wants me to enter suit concerning this matter or try to reach an amicable settlement."

4. This letter was also attached to the Complaint.

insured and because it is our position that the statute of limitations have run.

Not so significant to this decision, of interest, is paragraph 6 of the complaint:

On or about April 4, 1977, plaintiff wrote defendant again notifying them that defendant had ample time to make the investigation and asked for answers to defendant's position in the matter. Plaintiff advised defendant that at this time that if defendant was not prepared to settle the matter, plaintiff would enter suit.

Paragraph 9 of the complaint charges that:

Defendant did act in a fraudulent and deceitful manner; that said reckless, willful and wanton conduct constitutes a wrongful disregard of plaintiff's rights by:

.    .    .    .    .

(b) Lulling the plaintiff into a sense of security in that the defendant was acting in good faith in investigating the matter; plaintiff thereby relied on the truth of defendant's statements which he had every right to do and with no knowledge whatsoever of defendant's fraudulent and deceitful intent to deceive plaintiff.

The crux of the matter lies in the fact that plaintiff's counsel did not bring the lawsuit against Skinner within the six years allowed by the South Carolina Statute of Limitations.[5]

It is not this court's providence to determine whether or not plaintiff, if so advised, could have proceeded within the time frame of the statute of limitations. This discussion, and decision, is confined to the grounds stated in defendant's motion.

Defendant contends that plaintiff's effort leads only to attempted recovery of speculated damages for fraud, and that such damages would necessarily be confined to those damages a jury *might* award plaintiff in his claim against Dr. Skinner were it not for the expiration of the statute of limitations which cut off litigation between Skipper and Skinner.[6] Defendant claims support in plaintiff's deposition, heretofore referred to, taken November 14, 1977, and in the transcript of that deposition at page 37, line 10, plaintiff was asked the following question:

"All right, sir. Now, the Complaint [7] concludes that as a direct and proximate result of Defendant's fraud and deceit hereinabove referred to, that you have sustained a hundred thousand dollars actual and punitive damages. Why do you think you've been damaged to the extent of a hundred thousand dollars by anything that they did to you or to your lawyer? What's the basis for that?

The plaintiff's answer, appearing on page 38 of the transcript at line 5 was as follows: "I know those. I mean, I know what—okay. We're talking about damages to me being in a monetary sense that I had to pay my doctor—I'm still paying my doctor—and I had to pay the hospital, that I was unable to work, that due to the fact that I was a veteran, you know, I barely kept the wolf away from the door. As a matter of fact, I didn't keep him away; he got to me. And that's serious. And I mean that, too. Like I was talking a minute ago off the record and now we're on the record, but, you know, for years I couldn't do anything with my left hand; barely could I lift with both hands. Okay. And then there's been a subsequent thing—a continuous thing of, you know, like especially in extremely cold weather my hand freezes up on me. Some days—today it's looking good before you and your partner over here. A lot of times my finger is really stiff and drawn up more than others. And, conse-

---

5. Section 15–3–530, S.C.Code, 1976, reads as follows:

Within six years:

(5) an action for criminal conversation or for any other injury to the person or rights of another, not arising on a contract, not hereinafter enumerated.

6. There seems no dispute that plaintiff intended to sue Skinner and ask for a jury trial (if in federal court); in state court a jury trial would have been automatic because of the nature of the claim.

7. The complaint was verified.

quently, we're seeking the damages in your file—report."

Later in plaintiff's deposition, plaintiff described his personal injury malpractice damages in response to questions by his counsel (see transcript pages 43–46) and again described his damages as those flowing from the allegedly negligent acts of Dr. Skinner. As a result of the plaintiff's own sworn testimony relating to his damages, there can be no question but that the plaintiff seeks to recover in this fraud action those damages which he would have sought in an action against Skinner, defendant's insured.

Such damages are clearly speculative in nature due to the fact that plaintiff's injury is essentially based on the loss of a judgment he allegedly would have secured had the action against Dr. Skinner been brought within the six year statute of limitations. For a jury in the present action to award plaintiff the damages he seeks, such jury would have to substitute its judgment of the estimate of the injury for that of an unknown and unknowable jury. The basis of recovery is clearly speculative in that it would represent what a previous jury would have done. It would also be necessary for a jury in the present case to speculate as to plaintiff's chances of success in the barred action.

The question of speculative damages has been squarely dealt with in South Carolina in the case of *Whitman v. Seaboard Airline Railway,* 107 S.C. 200, 92 S.E. 861 (1917). In *Whitman,* the plaintiff, who was injured in a railroad accident, alleged that because of the fraud of defendant railroad, he did not bring suit for damages within the two-year statute of limitations. Defendant demurred. A lower court ruled on the demurrer on a motion for directed verdict and overruled the motion. The Supreme Court reversed and held that the motion should have been granted, and in so doing, stated:

The presiding judge held that the basis of recovery was not what another jury would have given, as that would be pure-

ly speculative; but the jury in this case could make their own estimate, after hearing the facts of the case. We have been cited to no authorities directly in point by either side, and we have been able to find none. We do not agree with the trial judge. The plaintiff lost the benefits of the suit he would have brought. When this jury was allowed to make its own estimate of the injury, there was a substitution of their independent judgment for that of an unknown and unknowable jury. It is manifest that, if the charge of fraud can set aside the statute of limitations, then the statute of limitations is nullified. The amount claimed in the complaint was $50,000.00, and the verdict was $10,000.00. The amount of the verdict was the estimate of that particular jury, and final as to amount, subject only to the power of the presiding judge to reduce it according to law. The verdict should have been directed on this ground. [92 S.E. 862]

Defendant contends that the court's decision in *Whitman* would bar recovery in the state courts of South Carolina and is binding upon this court under *Erie,* supra. It is clear that what plaintiff seeks here are the benefits of the suit he says he would have brought.

*Whitman* was discussed by this court in *Ransome v. Mimms,* 320 F.Supp. 1110 (1970).[8] The controversy in that case arose from proceedings instituted by the defendants, landlords, resulting in the eviction of the plaintiff, tenant. It was alleged that after the judgment of the magistrate evicting the plaintiff from the premises, on which he had operated a profitable business, the plaintiff was induced by the fraudulent representations of the defendant to forego his right to appeal from the magistrate's order. In discussing the *Whitman* case, the court stated:

The defendants find strong support for their argument in the case of *Whitman v. Seaboard Airline Railroad,* 107 S.C. 200, 92 S.E. 861 (1917). There the plaintiff,

---

8. This court apologizes for citing its own opinion, but in order that the parties may be fully

advised as to the reasoning employed, humbly refers to such opinion.

who was injured in a railroad accident, alleged that because of the fraud of the defendant railroad he did not bring suit for damages within the two-year statute of limitations. The defendant demurred. The lower court ruled on the demurrer on a motion for directed verdict and overruled the motion. The Supreme Court held that the motion should have been granted. The court agreed with the defendant in his argument that the plaintiff's injury was based on the loss of a judgment he would have secured had the action been brought within the two-year limitation. The court stated that if the jury were allowed to make its estimate of the injury, it would be a substitution of their judgment for that of an unknown and unknowable jury. The basis of recovery would have been speculative (what a previous jury would have done), and speculative damages are not recoverable.

Although that decision appears to be contrary to the considerable weight of authority in other jurisdictions, it is under the *Erie* rule, binding upon this court, if it would bar recovery in the state courts of South Carolina. *Ransome v. Mimms,* supra, at page 1113.

This court then distinguished the facts in *Ransome v. Mimms* from those in the *Whitman* case, stating that in *Whitman,* the amount of the damages could be measured only by the amount that would have been found by some jury which never considered the matter because of the alleged fraud. The court found, however; that in *Ransome v. Mimms,* the amount of the damages, if in fact damages resulted, was entirely independent of matters considered by the magistrate which, but for the alleged fraud, would have been considered on appeal by a state judge. The court then stated:

Though the court would have to make a determination as to whether the judgment of the magistrate could have been reversed in order to determine whether there had been any damage, the amount of the damage would be proven by testimony not before a magistrate and not relevant to the issues which he considered. *Ransome v. Mimms, supra,* at page 1113.

This court is mindful of the fact that *Whitman,* supra, is catalogued, by those attacking its philosophy, as an old case. The court is reminded that not all things which are old are wrong, and nature has taught us there are many things that are old, that, having stood the test of time, will become a more precious commodity by virtue of age. Certainly, in this day of an overflow of diversity damage suits in every court, and every state, and every federal district, this court is not constrained to depart from *Erie,* and to allow speculation to replace proof would create a dangerous impact on our civil trial system. This, apparently, is reflected in Corpus Juris where it is written:

Where actual pecuniary damages are sought, there must be evidence of their existence and extent, and some data from which they may be computed. No substantial recovery may be based on mere guess work or inference, but recovery must be supported by evidence or facts, circumstances and data justifying an inference that the damages awarded are a just and reasonable compensation for the injury suffered; and when compensatory damages are susceptible of proof for the proximate acts they may be measured with some degree of certainty, they must be so proved even in actions in tort.[9]

See also *Norwood v. Carter,* 242 N.C. 152, 87 S.E.2d 2 (1955). *Commonwealth Tire Co. v. Tri-State Tire Co.,* 156 W.Va. 351, 193 S.E.2d 544 (1972), and related cases.

A discussion of the cases plaintiff relies on would be in order. Initially, plaintiff relies on *Hampton v. Supreme Lodge K. P. Courts of Calanthe, etc.,* 161 S.C. 540, 159 S.E. 923, 925 (1931) where this court finds that the Supreme Court of South Carolina did not abandon the rules that a jury could not find damages in a nature of speculation of guess-work; the court found that there

---

**9.**   25 C.J.S. p. 691, Damages § 28.

was for consideration of the jury in that case a number of elements, such as the value of the policy lost, the sick benefits lost, the loss of future help by her sisters, in the court, the loss of companionship, love, care and protection. Again plaintiff cites *Charles v. Texas Company,* 199 S.C. 156, 18 S.E.2d 719, 728 (1942) which is a case on lost profits and which were applicable by data which could be furnished by the plaintiff. In that case the court held that it was sufficient that a reasonable basis of damage computation is afforded, which is not the case here. (See *Palmer v. Connecticut Ry. & Light Co.,* 311 U.S. 544, 61 S.Ct. 379, 385, 85 L.Ed. 336). *S. C. Elec. & Gas Co. v. Aetna Ins. Co.,* 233 S.C. 557, 106 S.E.2d 276, 277 (1958) cited by plaintiff in an action on a fire loss and the court said that the damages did not have to be an exact. And in *South Carolina Finance Co. v. Westside Finance Co.,* 236 S.C. 109, 113 S.E.2d 329, 336 (1960), plaintiff had data as to certain loans which plaintiff claimed defendant took away from him.

As can be seen, these cases are based on some data and not mere speculation, as is the basis for the claim of the plaintiff in this case.

Perhaps here the damages plaintiff seeks are the very same damages he would have sought in a timely action against Dr. Skinner. But if that is true, not only would this court be required to speculate as to the potential success of the plaintiff in prosecuting the claim against Skinner, but also the jury would be required to substitute their judgment as to the matter of damages that the unknown or unknowable jury would have assessed.

For the reasons stated, the motion is granted.

AND IT IS SO ORDERED.