Jerry A. BEECK and Judy A.
Beeck, Appellants,

v.

James J. KAPALIS, Robert C. Fasick, J.
A. Gervais, The Hartford Insurance
Group, and Aquaslide 'n' Dive Corpora-
tion, Appellees,

v.

EMPLOYERS MUTUAL CASUALTY
COMPANY, Illinois-Iowa Claim Service,
Inc., and Vincent E. O'Toole, Third-Par-
ty Defendants.

No. 64637.

Supreme Court of Iowa.

Feb. 18, 1981.

Rehearing Denied March 13, 1981.

John A. McClintock and David L. Brown of Hansen, McClintock & Riley, Des Moines, for appellants.

Eugene Davis and David J. Grace, of Davis, Grace & Vernon, P. C., Des Moines, for appellees.

Considered by REYNOLDSON, C. J., and LeGRAND, McGIVERIN, LARSON and SCHULTZ, JJ.

McGIVERIN, Justice.

Plaintiffs Jerry and Judy Beeck appeal from trial court's grant of summary judgment for defendants. Beecks had sued them claiming damages for misrepresentations allegedly made by defendants during previous litigation. We affirm in part, reverse in part and remand.

The unfortunate set of facts of this case raise issues of first, and we hope last, impression. On July 15, 1972, Jerry Beeck was attending a social gathering sponsored by his employer at Kimberly Village in Davenport, Iowa. Beeck was seriously injured when he went down a slide into a swimming pool, struck his head and fractured his neck.

Representatives of various insurance companies investigated the accident. Kimberly Village's insurer concluded that the slide was made by Aquaslide 'n' Dive Corporation of Brownville, Texas, and notified Aquaslide of the accident. Aquaslide's insurer, The Hartford Insurance Group, then investigated. Robert C. Fasick, one of Hartford's claims representatives, based on an investigation by James J. Kapalis, reported to Hartford that the slide "was definitely manufactured by [Aquaslide]."

On October 15, 1973, Beecks filed a complaint in federal district court against Aquaslide. Jerry sought damages for personal injuries based on theories of negligence, products liability and implied warranty. His wife, Judy, claimed damages for loss of consortium. The complaint alleged that Aquaslide designed, manufactured and assembled the slide involved in the accident. After the suit was commenced, Hartford took over the defense of Aquaslide and hired a law firm to represent it. J. A. Gervais, a claims supervisor, furnished the lawyers with the investigative file.

Aquaslide answered the complaint in December 1973 and admitted that it designed and manufactured the slide. Its president, Carl Meyer, also acknowledged on June 4, 1974, in an answer to an interrogatory, that the slide was an Aquaslide. Based on this information, Beecks did not further investigate the identity of the manufacturer. Iowa's statute of limitations for personal injury actions ran on July 15, 1974. § 614.-1(2), The Code.

On February 5, 1975, Meyer traveled to Iowa to give a deposition about the installation of the slide. To prepare for his deposition, he visited Kimberly Village to inspect the slide. His inspection revealed that the slide was not one designed or manufactured by his company.

After Meyer's discovery, Aquaslide sought to amend its answer to deny that it manufactured the slide. The federal district court, after an evidentiary hearing, granted leave to amend. *Beeck v. Aquaslide 'n' Dive Corp.*, 67 F.R.D. 411 (S.D.Iowa 1975), aff'd, 562 F.2d 537 (8th Cir. 1977). Aquaslide moved for, and was granted, a separate trial solely on the issue of whether

it designed, manufactured or sold the slide. After trial, the jury found that the slide was not one of Aquaslide's. The action against Aquaslide was therefore dismissed on its motion for summary judgment. The federal court's grant of leave to amend and sustention of the motion for separate trial were affirmed on appeal. *Beeck v. Aquaslide 'n' Dive Corp.*, 562 F.2d 537 (8th Cir. 1977).

While the appeal to the Court of Appeals for the Eighth Circuit was pending, Beecks filed a petition in Iowa district court on February 4, 1977. They alleged that as a result of fraudulent, negligent and innocent misrepresentations, defendants Aquaslide, Hartford, Gervais, Fasick and Kapalis caused them to lose their valid cause of action against the real manufacturer because the statute of limitations had run. Other parties, not involved in this appeal, were brought in as third-party defendants. Iowa R.Civ.P. 34(a).

Defendants moved for summary judgment of the suit in Iowa district court. The record consisted of the petition, answer, affidavits from the defendants and from attorneys for the Beecks and Aquaslide in the federal court, and Carl Meyer's deposition and testimony from the action in federal court. The trial court sustained defendants' motion for summary judgment and dismissed Beecks' petition. Beecks appeal to us.

The following issues are presented for our consideration:

1. Did the trial court err in granting summary judgment for defendants because plaintiffs failed to allege damage since their claims against proper parties might not be barred by the statute of limitations?

2. Was there a genuine issue of material fact whether defendants made reckless misstatements, amounting to fraud, about the manufacturer of the slide when they did not have sufficient information upon which to base the statements?

3. Did the trial court err in concluding that the tort of negligent misrepresentation is not applicable to misrepresentations made by a party during litigation?

4. Does the tort of innocent misrepresentation apply in Iowa to misrepresentations made by a party during litigation?

I. *Scope of review.* By moving for summary judgment, defendants had the burden of showing that there was no genuine issue of material fact and they were entitled to judgment as a matter of law. Iowa R.Civ.P. 237(c); *Tasco, Inc. v. Winkel*, 281 N.W.2d 280, 282 (Iowa 1979). The trial court, and this court on review, must view the entire record in the light most favorable to the parties opposing the motion, the Beecks. *Tasco*, 281 N.W.2d at 282.

II. *Claim of damages.* In their motion for summary judgment, defendants claimed that they were entitled to judgment, as a matter of law, because the petition failed to properly claim loss of a remedy against the real manufacturer of the slide on which Jerry Beeck was injured. After losing in federal court, the Beecks did not sue the real manufacturer. Therefore, defendants claim that Beecks cannot show that the statute of limitations would be asserted, or would bar their claim in an action against the true manufacturer.

The defense that an action is barred by the running of the statute of limitations is personal and may be asserted or waived. *First v. Byrne*, 238 Iowa 712, 721, 28 N.W.2d 509, 513 (1947); *Fitzgerald v. Flanagan*, 155 Iowa 217, 226, 135 N.W. 738, 741 (1912). Therefore, defendants say it is pure speculation whether Beecks' claim against the real manufacturer is barred. Since Beecks failed to allege that they tried to sue the true manufacturer and lost because of the statute of limitations, defendants say Beecks failed to state a claim for damages against them for any type of misrepresentation.

Cases in which a plaintiff claims a defendant caused him to lose an otherwise valid cause of action because of the running of statutes of limitation often involve claims against attorneys for malpractice. Annot., 90 A.L.R.3d 293 (1979). To hold the attorney liable, a plaintiff must prove

that he would have been successful in the underlying suit and that his claim was lost through the attorney's negligence. *Baker v. Beal*, 225 N.W.2d 106, 109 (Iowa 1975). Where the attorney negligently allowed the statute of limitations to run, there is no requirement that the plaintiff try to prosecute the underlying suit before attempting to hold the attorney liable. *Drury v. Butler*, 171 Mass. 171, 175, 50 N.E. 527, 528–29 (1898); *Fuschetti v. Bierman*, 128 N.J.Super. 290, 295, 319 A.2d 781, 784 (Law Div. 1974); *King v. Jones*, 258 Or. 468, 473, 483 P.2d 815, 818 (1971) (possibility of waiver of defense of statute of limitations "is too speculative and unrealistic for serious consideration").

▪ Beecks' claim is that defendants' misrepresentations caused them to lose their valid cause of action. They will have to prove that defendants made misrepresentations and, as in a malpractice action against an attorney, that Beecks would have been successful on the underlying cause of action. Where a plaintiff alleges that a defendant's misrepresentations caused the loss of a valid cause of action, we will not require the plaintiff to bring the original action and lose before recognizing a damage claim for the misrepresentation. Beecks alleged that the statute of limitations has run against the true manufacturer. This generated an issue of whether their original claim is, in fact, barred by the statute of limitations. The trial court erred, therefore, in concluding as a matter of law in summary judgment that Beecks could not prove that they lost their original cause of action. Plaintiffs should be given an opportunity to present their evidence on this damage issue to a trier of fact.

We turn now to consideration of the legal theory, if any, upon which Beecks may base their claim.

III. *Fraudulent misrepresentation.* In their petition, Beecks alleged that defendants recklessly misrepresented to them in the federal court action that Aquaslide manufactured the slide and therefore the misrepresentation amounted to fraud. Our state trial court agreed with defendants' contention that no genuine issue of fact existed whether defendants knew that the investigation had been insufficient. The court relied on affidavits from Hartford's employees, the lawyer Hartford hired for Aquaslide, and Meyer's sworn testimony stating that they did not know the investigation was insufficient. We conclude that Beecks have generated a genuine issue of fact on whether Aquaslide, through its president, Carl Meyer, was reckless in making a misrepresentation that amounted to fraud. However, the court properly granted summary judgment for the other defendants.

▪ A. *General principles.* The elements of fraud are: (1) a material misrepresentation (2) made knowingly (scienter) (3) with intent to induce the plaintiff to act or refrain from acting (4) upon which the plaintiff justifiably relies (5) with damages. *Hall v. Wright*, 261 Iowa 758, 766, 156 N.W.2d 661, 666 (1968); Restatement (Second) of Torts § 525 (1977); W. Prosser, *Handbook of the Law of Torts*, § 105 (4th ed. 1971). A person who fraudulently causes a plaintiff to lose an otherwise valid cause of action is liable for damages when the plaintiff's claim is barred by the statute of limitations. *Shirk v. Shirk*, 186 Kan. 32, 348 P.2d 840 (1960); *Trombley v. Merchants Mutual Insurance Co.*, 79 Misc.2d 742, 360 N.Y.S.2d 829 (Sup.Ct.1974); *Hiliel v. Motor Haulage Co.*, 140 N.Y.S.2d 51 (Sup.Ct.1955), *aff'd*, 1 App.Div.2d 782, 149 N.Y.S.2d 224 (1956) (mem.); Annot., 33 A.L.R.3d 1077 § 4 (1970). *Contra, Skipper v. United States Fidelity and Guaranty Co.*, 448 F.Supp. 74 (D.S.C.1978) (applying South Carolina law). A defendant who makes reckless misrepresentations during trial about the extent of insurance coverage to induce settlement may be liable for damages for fraud. *Slotkin v. Citizens Casualty Co.*, 614 F.2d 301 (2d Cir. 1979), *cert. denied*, —— U.S. ——, 101 S.Ct. 395, 66 L.Ed.2d 243 (1980).

▪ In asserting that defendants are liable for fraudulent misrepresentations, Beecks are not claiming that any of the defendants knew or believed that Aquaslide

was not the manufacturer. The record indicates that up until Meyer discovered that the slide was not made by his company, all the defendants honestly were convinced that it was an Aquaslide. An honest belief in the truth of one's statements, however, does not preclude a finding of fraud. When a defendant makes a misrepresentation recklessly, with careless disregard for whether it is true or false, he may be liable for fraud. *Grefe v. Ross*, 231 N.W.2d 863, 867 (Iowa 1975); *Hall*, 261 Iowa at 772, 156 N.W.2d at 669; Restatement, *supra*, § 526(b)(c); Prosser, *supra*, § 107, at 701. In this situation, a maker of a misstatement may be liable where "he has merely a belief in its existence and recognizes that there is a chance, more or less great, that the fact may not be as it is represented" even though he "is honestly convinced of its truth from hearsay or other sources that he believes to be reliable." Restatement, *supra*, § 526, Comments e, f. The fact that defendants were not motivated by ill will toward Beecks and thought they were helping Beecks by narrowing the scope of the litigation does not necessarily preclude a finding of fraud. Prosser, *supra*, § 107, at 700.

■ B. *Hartford and its employees.* We conclude that the court correctly ruled that defendants Hartford, Gervais, Fasick and Kapalis were entitled to summary judgment on Beecks' claim for fraudulent misrepresentation. The record fails to establish a genuine issue on whether these defendants recklessly made misrepresentations which could be deemed fraud.

Assuming that these four defendants intended or had reason to expect that Beecks would act or fail to act on the misrepresentations, there is no issue of whether they were made recklessly. There is no claim that Hartford or its employees recklessly conducted the investigation or departed from their normal procedure. We decline to hold that a statement made in reliance on an insurance investigation, without more, generates an issue of recklessness. As discussed later, determining the true manufacturer of one of these slides is not a

simple procedure. While these four defendants might not have been as careful as they should have, and should have inquired further, this is not enough to find the statement was made with reckless disregard for its truth. *See B & B Asphalt Co. v. T. S. McShane Co.*, 242 N.W.2d 279, 284 (Iowa 1976).

C. *Aquaslide.* While we hold that Beecks have failed to generate a genuine issue of fraud by defendants Hartford and its three employees, we reach a different conclusion for defendant Aquaslide. We now reverse the trial court's grant of summary judgment for Aquaslide on the fraud divisions of plaintiffs' petition.

After conducting their investigation, Beecks, as did everyone else, concluded that the slide was an Aquaslide. Aquaslide, through its attorney, admitted this in the answer to Beecks' complaint in federal court. Beecks were not content to rely solely on the answer and therefore directed an interrogatory to Aquaslide, which was answered by the designer of the slide and president of Aquaslide, Carl Meyer. Meyer, in a signed answer to the interrogatory and under oath, admitted that while he had no record of the sale of the slide directly to Kimberly Village, one of its distributors delivered an Aquaslide to Kimberly Village. An affidavit in the Iowa action from Aquaslide's attorney in the federal action acknowledged that in the answer and in the answer to the interrogatory, it was admitted that the slide was an Aquaslide. Relying on the answer and the answer to the interrogatory, Beecks began to prepare for trial without further investigation into the identity of the manufacturer.

■■ If these were the only facts before us, we might not conclude that there was an issue whether Aquaslide made reckless misstatements to Beecks. Pleadings, like answers to interrogatories, are not carved in stone. Pleadings may be amended "when justice so requires." Fed.R.Civ.P. 15(a); Iowa R.Civ.P. 88. Interrogatories are a discovery device. Ordinarily, answers to them do not conclusively bind the answerer, and are often amended or supple-

mented. 8 C. Wright & A. Miller, *Federal Practice and Procedure* § 2181 (1970). Other facts in the record reveal, however, that Beecks have at least generated an issue of whether Aquaslide, through Meyer, recklessly made the statements.

Included in the record before the Iowa court were portions of Meyer's testimony in the federal action. The testimony indicates that prior to Jerry Beeck's accident, there were other times when allegations were made, which in one case led to litigation, that an Aquaslide was involved in an accident when, in fact, it was not an Aquaslide. The problem of misidentification of the manufacturer of a slide is compounded by the highly competitive nature of this industry. Meyer stated that distributors are not above using Aquaslide's literature to promote a sale and then substituting a slide made by one of Aquaslide's competitors. A competitor "pirated away" one of Aquaslide's employees and began making slides similar to Aquaslide's products. The problem reached such magnitude that Meyer had a standing order with his insurance agent in California to provide him with pictures of any Aquaslide allegedly involved in an accident. From either pictures or an in-person identification, Meyer could determine whether his company made the slide.

When faced with Beecks' allegation that the slide was an Aquaslide, Meyer asked for some identification of it from his insurer. He was furnished with information indicating that Kimberly Village ordered a slide from a distributor based on Aquaslide's promotional literature. Meyer also received an invoice which stated that Kimberly Village ordered and received an Aquaslide. Meyer, despite his awareness that distributors were known to sell his competitor's slides as Aquaslides, did not follow up with any further investigation. The standing order for photographs was not followed. Meyer, until February 1975, did not personally inspect the slide. Nevertheless, on June 4, 1974, before the two-year statute of limitations on Beecks' claim had run, Meyer answered the interrogatory by stating this was an Aquaslide. Absent any evidence that Beecks were or should have been aware of

the difficulty in determining the origin of the slide, we conclude that they have at least generated an issue of fact on whether Meyer on behalf of Aquaslide recklessly misrepresented to them that the slide was an Aquaslide.

We caution that we are only considering Beecks' claim against Aquaslide for representations, primarily by Meyer in the answer to the interrogatory, that the slide was an Aquaslide. We are aware that Aquaslide, which was in Texas, might claim that it was basing the misrepresentation to Beecks on its insurer's investigation and statements from the lawyers hired to defend it. Since we are not presented with any cross-claim by Aquaslide against its insurer for any alleged breach of its duty to conduct a proper defense, particularly in the investigation, we express no opinion on the subject. *See generally Kooyman v. Farm Bureau Mutual Insurance Co.*, 267 N.W.2d 403 (Iowa 1978); *Henke v. Iowa Home Mutual Casualty Co.*, 250 Iowa 1123, 97 N.W.2d 168 (1959); *Getchell & Martin L. M. Co. v. Employers Liability Assurance Corp.*, 117 Iowa 180, 90 N.W. 616 (1902); R. Keeton, *Insurance Law* § 7.6 (1971); Annot., 34 A.L.R.3d 533 § 7 (1970). The Beecks have not attempted to assert, by assignment or under section 516.1, The Code, any claim Aquaslide may have against its insurer. *See Kooyman*, 267 N.W.2d at 404.

**IV.** *Negligent misrepresentation.* Beecks also claimed that all defendants were liable for negligently misrepresenting that Aquaslide manufactured the slide. The trial court decided that liability for negligent misrepresentations does not extend to misrepresentations made during the course of litigation. We agree and therefore affirm the trial court's grant of summary judgment for all defendants on Beecks' claim for negligent misrepresentation.

The elements of the tort of negligent misrepresentation are stated in Restatement, *supra*, § 552. It provides in relevant part:

(1) One who, in the course of his business, profession or employment, or in any other transaction in which he has a pecuniary interest, supplies false information for the guidance of others in their business transactions, is subject to liability for pecuniary loss caused to them by their justifiable reliance upon the information, if he fails to exercise reasonable care or competence in obtaining or communicating the information.

(2) . . . [T]he liability stated in Subsection (1) is limited to loss suffered

(a) by the person or one of a limited group of persons for whose benefit and guidance he intends to supply the information or knows that the recipient intends to supply it; and

(b) through reliance upon it in a transaction that he intends the information to influence or knows that the recipient so intends or in a substantially similar transaction.

We recognized the tort in *Ryan v. Kanne*, 170 N.W.2d 395 (Iowa 1969) and applied it in *Larsen v. United Federal Savings and Loan Association*, 300 N.W.2d 281 (Iowa 1981).

▉ In recognizing this tort, "the spectre of unlimited liability with claims devastating in number and amount crushing the defendant because of a momentary lapse from proper care, has haunted the courts." Prosser, *supra*, § 107, at 708. To protect defendants, the group to whom the defendant may be liable does not include all persons who reasonably may be expected to use the information. Restatement, *supra*, § 552, Comments h, i. Rather, a defendant is only liable to users of the information who are actually foreseen, taking into consideration the end and the aim of the transaction. *Ryan*, 170 N.W.2d at 403. We will assume, without deciding, for purposes of this case that all defendants actually foresaw the Beecks as users of the information. Summary judgment for the defendants was proper, however, because we decline to extend this tort to misrepresentation about the identity of a defendant made during litigation.

▉ The law has developed special rules for civil liability resulting from statements made during litigation. A civil action is not recognized for perjury, an intentional misrepresentation, made during litigation by either a party or a witness. *Smith v. Sinclair*, 424 F.Supp. 1108, 1113 (W.D.Okla.1976); *Merritt-Chapman & Scott Corp. v. Elgin Coal, Inc.*, 358 F.Supp. 17, 22 (E.D.Tenn.1972), *aff'd* 477 F.2d 598 (6th Cir. 1973); 60 Am.Jur.2d *Perjury* § 75 (1972). The rationale behind this rule is presumably to end litigation. A plaintiff, and his attorney, are not liable for negligently representing, by bringing a lawsuit, that the plaintiff has a cause of action against a defendant. *Brody v. Ruby*, 267 N.W.2d 902, 907 (Iowa 1978). This encourages plaintiffs to resolve their claims in court and absolves them from liability " 'for negligently . . . failing to determine in advance that which, ultimately, only the courts could determine.' " *Brody*, 267 N.W.2d at 907 (quoting *Lyddon v. Shaw*, 56 Ill.App.3d 815, 822, 14 Ill.Dec. 489, 494, 372 N.E.2d 685, 690 (1978)). A defendant who is wrongfully sued is limited to a claim of abuse of process or malicious prosecution. *Id.* Finally, neither a lawyer nor a party is liable in Iowa for defamation in statements that have some relation to issues in a judicial proceeding. *Asay v. Hallmark Cards, Inc.*, 594 F.2d 692 (8th Cir. 1979); *Robinson v. Home Fire & Marine Insurance Co.*, 242 Iowa 1120, 49 N.W.2d 521 (1951); Restatement, *supra*, §§ 586–88; Prosser, *supra*, § 114. The purpose of this immunity is to encourage the open resolution of disputes by removing the cloud of later civil suits from statements made in judicial proceedings.

Similar policy considerations lead us to conclude that the tort of negligent misrepresentation should not apply to statements made during litigation. A defendant, who during litigation incorrectly admits that it manufactured a product involved in an accident, should not be liable for negligence that results in the plaintiff losing his cause of action. If defendants could be liable for negligent misrepresentations made in pleadings and during discovery, they would pre-

sumably deny all allegations and be as uncooperative as possible in efforts to narrow the scope of the suit. Plaintiffs would be put to the proof of every allegation in the petition with resulting delay and expense.

We conclude that other sanctions are available to discourage misrepresentations made during litigation. As we hold in division III, a party who makes fraudulent misstatements during litigation would be liable. Also, if a party makes a misstatement in a pleading and seeks to amend, the court may deny leave to amend because of estoppel or prejudice to the other party. *Foman v. Davis*, 371 U.S. 178, 83 S.Ct. 227, 9 L.Ed.2d 222 (1962); *Caulfield v. Bethlehem Steel Corp.*, 195 F.Supp. 360 (E.D.Pa.1961); 3 Moore's Federal Practice ¶ 15.08[4]. If parties change their position, the change would ordinarily be admissible at trial. *Bigelow v. Williams*, 193 N.W.2d 521, 524 (Iowa 1972); *Clubb v. Osborn*, 260 Iowa 223, 227, 149 N.W.2d 318, 320 (1967); *Leo v. Leo*, 239 Iowa 873, 876, 32 N.W.2d 777, 779 (1948).

The trial court properly granted summary judgment for the defendants on Beecks' claim for negligent misrepresentation made during litigation. There is no error here.

V. *Innocent misrepresentation.* Beecks also claimed that defendants were liable for innocently misrepresenting, *i. e.*, without fraud or negligence, that the slide was an Aquaslide. Restatement, *supra*, § 552C. While we have not expressly considered section 552C, there is some doubt whether Iowa recognizes innocent misrepresentation as a separate tort. *Grefe*, 231 N.W.2d at 867; *Hall*, 261 Iowa at 772, 156 N.W.2d at 669. It is unnecessary for us to decide this issue today. Our failure to apply the tort of negligent misrepresentation to statements made during litigation dictates that we likewise decline to accept a theory of innocent misrepresentation in the litigation situation. The trial court properly granted defendants summary judgment on this claim.

In summary:

1. As stated in division III–B, we affirm the summary judgment granted in favor of defendants Hartford, Kapalis, Fasick and Gervais on the portions of plaintiffs' petition based on fraudulent misrepresentation;

2. For the reasons stated in divisions IV and V, we affirm the court's grant to defendants of summary judgment on the portions of plaintiffs' petition based on negligent and innocent misrepresentation;

3. In addition to reversing as to the damages issue discussed in division II, as stated in division III–C we reverse the grant of summary judgment in favor of Aquaslide on the portions of plaintiffs' petition based on fraudulent misrepresentation. We return the case to the district court for further appropriate proceedings.

Costs are taxed two-thirds to plaintiffs and one-third to Aquaslide.

AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.