**Michael M. GARWOOD,**
**Plaintiff-Appellant,**

v.

**INTERNATIONAL PAPER COMPANY,**
**et al., Defendants-Appellees.**

No. 80–5386.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Jan. 22, 1982.

* Former Fifth Circuit case, Section 9(1) of Public    Law 96–452—October 14, 1980.

Paul G. Komarek, Panama City, Fla., for plaintiff-appellant.

John Richard Smoak, Panama City, Fla., for defendants-appellees.

Before RONEY, KRAVITCH and ANDERSON, Circuit Judges.

R. LANIER ANDERSON, III, Circuit Judge:

In this diversity case, plaintiff-appellant Michael M. Garwood sued defendants-appellees International Paper Company ("International Paper"), the Gulf Coast Council, Boy Scouts of America ("Council"), and their respective insurers, American Motorists Insurance Company and The Hartford Insurance Company. On October 9, 1973, Garwood sustained severe injuries as a result of diving into and hitting the bottom of a pond located in Camp Blue Springs, Washington County, Florida. International Paper owns the land on which Camp Blue Springs is located and has leased the land, at disputed times, to the Millville Dad's Club of Millville, Florida ("Dad's Club"), and then to the Council. The Dad's Club has never been a party to this case. On July 30, 1976, Garwood filed his complaint, contending that International Paper and the Council were liable for his injuries. Garwood alleged that even though International Paper and the Council knew or should have known that swimming and diving in the pond was dangerous and hazardous, they had made no effort to supervise the pond, to restrict its use, to warn of its danger or to post signs indicating its danger or hazard. On July 6, 1977, after the district court denied their motions to dismiss the complaint, the defendants answered, in part admitting that the Council was the lessee of Camp Blue Springs at the time of Garwood's injuries.

After the applicable four-year statute of limitations on Garwood's claim apparently had passed, the Council moved for leave to amend its answer to deny that it was the lessee of Camp Blue Springs at the time of Garwood's injuries. The district court granted leave to amend. Subsequently, the Council and International Paper filed a joint amendment denying that the Council was the lessee at the crucial time. The district court granted summary judgment

in the Council's favor, on the ground that the undisputed facts established that the Council did not occupy or possess Camp Blue Springs until after Garwood's injuries. After a trial on the merits, the jury returned a verdict in favor of International Paper. The court entered judgment against Garwood. We affirm.

## I. ISSUES

This case presents five issues: (1) whether the district court properly denied Garwood's motion in limine, which sought to prevent International Paper from introducing into evidence either its lease to the Dad's Club or its lease to the Council, (2) whether the district court properly refused to give Garwood's requested jury instruction concerning the liability of those with joint control and possession of land, (3) whether the district court should have given any instruction to the jury concerning International Paper's liability to trespassers and to uninvited licensees, (4) whether the district court properly refused to give the jury Garwood's special verdict form, and (5) whether the district court properly excluded expert testimony concerning Garwood's contributory negligence.

In addition, it is important to note what is *not* at issue in this appeal. Except for a passing mention in his brief concerning the motion in limine question, Garwood does not contest the district court's grant of the Council's motion to amend or the district court's grant of summary judgment in the Council's favor. Moreover, at oral argument, Garwood's counsel specifically conceded that he was not appealing on these two issues. Thus, the district court's denial of Garwood's motion in limine is the only issue on appeal involving the defendants' original admission in their answer that the Council was the relevant lessee.

## II. MOTION IN LIMINE

On the first day of trial, Garwood filed a motion in limine, seeking to prevent International Paper from introducing into evidence either its lease to the Dad's Club or its lease to the Council. The district court denied the motion, and permitted the introduction of the Dad's Club lease into evidence. On appeal, Garwood argues that the district court should have excluded the Dad's Club lease and should have stricken International Paper's defense to liability based on the lease. Garwood accuses International Paper of bad faith and of deliberate misrepresentation on the issue of the proper lessee. Although Garwood's argument lacks clarity, he seems to be arguing that International Paper should be estopped because of its alleged bad faith and misrepresentation.

▪ The major problem with Garwood's position is that he made no showing of bad faith or deliberate misrepresentation either in the district court or on appeal. In connection with the Council's motion to amend its answer on the proper lessee issue, Garwood did argue bad faith, as well as prejudice to him because the statute of limitations apparently had barred any suit against the Dad's Club. However, the district court specifically found that there was no undue delay, bad faith or dilatory motive, at least as to the Council, and that there was no undue prejudice to Garwood. International Paper's brief states: "At no time, during the pendency of the motion or after entry of the order ... did [Garwood] produce any facts to substantiate his allegations of fraud and bad faith." (International Paper Brief at 9). We have searched the record in vain for some evidence of bad faith. We recognize that the district court's finding of no bad faith focused only on the Council, because only the Council had moved for leave to amend.[1] However,

---

1. Garwood's brief contains a single sentence possibly suggesting an argument that International Paper's amendment to correct the mistake with regard to the proper lessee was invalid because it was without leave of court. The argument, if made, is without merit. It is true that only the Council moved for leave to amend. However, the record clearly establishes that International Paper, which was represented by the same counsel, was taking the same position. Shortly after the January 5, 1979, order allowing the amendment, the Coun-

we note that counsel for the Council, in his memorandum in support of the motion to amend, stated that the mistake with regard to the proper lessee was learned only within the last ten days before the motion. (R. 203). Since the same counsel represented both the Council and International Paper, there is a strong inference that both International Paper and the Council learned of the mistake at the same time. We need not rely on inferences, however. Garwood is the party asserting bad faith and the party asserting that the district court erred in denying his motion in limine; the absence of evidence in the record to show error is fatal.[2]

The peculiar feature of this case is that Garwood is not appealing the district court's ruling granting the Council's motion to amend to correct the mistake concerning the proper lessee, nor is he appealing the district court's grant of summary judgment in favor of the Council. At first blush, the district court's finding of no undue prejudice to Garwood is somewhat surprising in view of the fact, well known to the district court at the time, that, by the time of the motion to amend, the statute of limitations had run so that Garwood was barred from suing the prior lessee, the Dad's Club.[3] Of course, it is possible that the Dad's Club was judgment-proof or uninsured or that Garwood did not wish to sue the Dad's Club for some other reason. In any event, there is no evidence in the record on appeal to show that the district court was erroneous in finding an absence of prejudice, and thus no basis for an appellate finding of abuse of discretion.[4]

Garwood's other arguments in support of his effort to reverse the district court's denial of his motion in limine are also without merit.

## III. JURY INSTRUCTION ON JOINT CONTROL AND POSSESSION

[2] Garwood challenged the district court's failure to give his requested jury instruction concerning the liability of those

cil and International Paper filed a joint amendment correcting the mistake, "[p]ursuant to the Court's order of January 5, 1979." (R.245). Garwood made no objection to International Paper's amendment.

2. We note also that the district court apparently conducted a hearing on January 5, 1979, to consider the motion to amend, but that appellant Garwood has not included a transcript of that hearing in the record on appeal. In addition, Garwood included in the record on appeal the trial transcript only for the second through the fifth days of trial. Because his motion in limine was filed at the beginning of the first day of trial, it is possible that the district court conducted some inquiry into Garwood's allegations of bad faith. However, all we know is that the district court denied the motion in limine.

3. *Compare Jones v. Ambler Quarry, Inc.*, 64 F.R.D. 696, 698 (E.D.Pa.1974) (motion to amend to deny ownership and control of land denied; statute of limitations barred action against third parties that may have been in possession and control) *and David v. Crompton & Knowles Corp.*, 58 F.R.D. 444, 447–48 (E.D. Pa.1973) (motion to amend to deny design, manufacture, and sale of machine denied; statute of limitations barred action against proper party) *with Beeck v. Aquaslide 'N' Dive Corp.*, 67 F.R.D. 411 (S.D.Iowa 1975) (motion to amend to deny manufacture, sale, and distribution of swimming pool slide granted; statute of limitations apparently barred action against proper party), *aff'd*, 562 F.2d 537 (8th Cir. 1977).

4. It is also possible that Garwood decided, as a trial tactic, that it would be better to have *only* International Paper as a defendant, and not to have either the Council or the Dad's Club at the defense table. This tactic would have been especially advantageous had Garwood succeeded in excluding from evidence both the Council lease and the Dad's Club lease, and in depriving International Paper of any defense based on the fact that the premises were under the control of a lessee. Such a "home-run" was the only relief prayed for in Garwood's motion in limine in the district court. On appeal, Garwood seems to realize the lack of merit in that position, and argues alternatively that International Paper should have been held to its original admission that the Council was the lessee, and should have been permitted to introduce only the Council lease, rather than the Dad's Club lease. However, the latter argument is also without merit. On the joint control and possession issue, the Dad's Club lease, which was admitted into evidence, was more favorable to Garwood than was the Council lease, and therefore any error in this regard was harmless.

in joint control and possession of property.[5] He argues that the evidence shows only that International Paper and its lessee were in joint control and possession of at least the pond, if not of the entire Camp. On the control and possession issue, the district court instructed the jury that (1) when a property owner has surrendered entire possession and control to a tenant and has not engaged in fraud or concealment, the owner is not liable either to the tenant or to any person on the land in the right of the tenant, and (2) if the owner retains control of any portion of the leased premises, he is liable for defects existing on any such portion as to which he retains control. Garwood does not contest these instructions, just the failure to give one concerning joint possession and control. We uphold the district court's refusal to give Garwood's requested instruction.

Assuming, without deciding, that Garwood's instruction is a correct statement of Florida law,[6] Garwood suffered no prejudice by the district court's failure to give this instruction. Despite his contentions, the evidence simply does not establish that International Paper and the Dad's Club exercised joint control and possession over Camp Blue Springs in general or over the pond in particular. The Camp was leased to the Dad's Club and then to the Council for recreational purposes. An International Paper representative did appear at the Camp from time to time, but only to insure

that the lessee and Camp visitors were not damaging the trees. Indeed, even though International Paper reserved timber rights in its leases, International Paper evinced a particular sensitivity to its lessees' recreational use of the Camp. Although International Paper logged land in the vicinity of the Camp, it evidently never removed any trees from the Camp itself, for at least 15 years. (Record, vol. 3, at 68–70). Moreover, no International Paper employees ever used the Camp for personal recreation, with the exception of those employees who were members of the Dad's Club. (Record, vol. 3, at 77–78). When the evidence is viewed as a whole, no reasonable jury could have concluded that International Paper and the Dad's Club exercised joint control and possession over the Camp. Thus, we uphold the district court's denial of Garwood's requested jury instruction.

## IV. JURY INSTRUCTION ON THE LIABILITY OF LANDOWNERS TO TRESPASSERS AND TO UNINVITED LICENSEES

Garwood objects to the district court's jury instruction on the duty of a landowner to trespassers and to uninvited licensees.[7] Garwood does not argue that the instruction was a misstatement of Florida law. Instead, he contends that the instruction misled the jury because the record contains no evidence from which a reasona-

---

**5.** The requested instruction reads:

Control and possession of a tract of land may be in two persons or entities at the same time.

When two or more persons or entities are in control and possession of a tract of land at the same time, each of the persons or entities have the same rights and responsibilities toward someone upon that land as if that person or entity had the sole control and possession of that land.

**6.** We also assume that Florida law is the applicable substantive law in this case because both parties so argued, both in the district court and on appeal. *See N. K. Parrish, Inc. v. Southwest Beef Industries Corp.*, 638 F.2d 1366, 1370 n.3 (5th Cir. 1981) (parties and district court interpreted agency agreement under Texas law; because neither party raised or briefed choice of law issue on appeal, Texas law assumed to apply); *Smith v. New York Life Insurance Co.*,

579 F.2d 1267, 1270 n.5 (5th Cir. 1978) (parties bound by legal theories on which they rely in district court, including choice of law in diversity case, absent manifest injustice).

**7.** The relevant portion of the challenged instruction reads:

A trespasser is a person who enters upon the land of another person without license, invitation, or other right and intrudes upon the land for some definite purpose of his own, or for his own convenience, or merely with no apparent purpose other than to satisfy his own curiosity. An uninvited licensee is a person who has chosen to come upon the land of another solely for his own convenience without invitation which is either expressed or reasonably implied under the circumstances.

ble jury could conclude that Garwood was a trespasser or an uninvited licensee at the time of his injuries. We conclude that the district court properly gave this instruction to the jury.

We assume, without deciding, that the district court's instruction was a correct statement of the Florida law concerning the definition of a trespasser and an uninvited licensee. The record contains sufficient evidence to create a jury question as to whether Garwood was a trespasser or an uninvited licensee, as defined by the district court's instruction. Garwood himself testified that neither he nor, to the best of his knowledge, any of his companions on the day of his injuries requested permission from anyone to visit Camp Blue Springs. In addition, although some testimony indicates that the community around the Camp considered the Camp open for public use, a photograph submitted to the jury indicates that at the gate of the Camp, four large signs attached to a pole were posted, reading "Stop," "Posted," "Private," and "No Trespassing." A Dad's Club member who lived near the Camp and who apparently watched over it for the Club testified that these signs were posted continuously from 1958 until after Garwood's injuries. Moreover, Garwood himself responded affirmatively to a question from International Paper as to whether he and his companions visited the camp "for [their] own enjoyment, for [their] own purposes." (Record, vol. 6, at 7). Garwood also agreed that "everyone was anxious to get into the water," upon arriving at the Camp. (Record, vol. 6, at 9). Under our assumption that the district court correctly stated the Florida definition of a trespasser and an uninvited licensee, this evidence raised a jury question as to whether Garwood fit one of those two categories. Thus, we uphold the district court's giving of the instruction.

## V. DENIAL OF SPECIAL VERDICT

Although both Garwood and International Paper requested a special verdict, the district court decided instead to submit only a general verdict form to the jury. Garwood argues that the district court improperly declined to use Garwood's special verdict form. This court has noted that special verdicts greatly benefit an appellate court's review of jury findings. *Jones v. Miles*, 656 F.2d 103, 106 n.3 (5th Cir. 1981). However, under Fed.R.Civ.P. 49(a), the district court has wide discretion as to whether to require the jury to return a special or a general verdict. *E.g., Miley v. Oppenheimer & Co.*, 637 F.2d 318, 334 (5th Cir. 1981); *Edwards v. Sears, Roebuck & Co.*, 512 F.2d 276, 294–95 (5th Cir. 1975); *Borel v. Fibreboard Paper Products Corp.*, 493 F.2d 1076, 1100 (5th Cir. 1973), *cert. denied*, 419 U.S. 869, 95 S.Ct. 127, 42 L.Ed.2d 107 (1974); 5A *Moore's Federal Practice*, ¶ 49.03[1] at 49–10 to 49–13 (1981). In light of this discretion, we reject Garwood's suggestion that we adopt a rule requiring the district court to use a special verdict form whenever all parties request the district court to do so. Further, Garwood has demonstrated no prejudice from the denial of the special verdict, other than a vague assertion of potential jury bias in favor of International Paper, which evidently is a major landowner in the area of the Camp. Thus, we hold that the district court's denial of a special verdict was not an abuse of discretion.

## VI. EXCLUSION OF EXPERT TESTIMONY

During trial, Garwood offered the deposition testimony of an expert in "human factors engineering." Garwood challenges only the district court's refusal to permit the introduction of the deposition solely for the purpose of demonstrating that Garwood was not contributorily negligent in sustaining his injuries. Garwood asserts that human factors engineering is a specialized area within the field of psychology. Considering all of the environmental data available to an individual in a given situation, as well as that individual's state of mind at the time, a human factors engineer purports to render an opinion on the individual's probable resulting conduct. When that opinion as to probable conduct matches the

actual conduct of a party accused of contributory negligence, Garwood suggests that the expert's opinion may support the contention of reasonable conduct in the particular situation, and thus a lack of contributory negligence.

Although not questioning the expert's credentials, the district court here excluded the testimony on two grounds: (1) that it would not aid the jury in determining the facts, and (2) that the contributory negligence issue involved in this case was not beyond the common understanding of the average person. We uphold the district court's exclusion of the expert testimony on the first ground and thus do not reach the issue of the propriety of the exclusion on second ground.

Even in a diversity case, the Federal Rules of Evidence govern the admissibility of evidence. *Ballou v. Henri Studios, Inc.,* 656 F.2d 1147, 1153 (5th Cir. 1981); *Johnson v. William C. Ellis & Sons Iron Works, Inc.,* 609 F.2d 820, 821 (5th Cir. 1980). Thus, Garwood's extensive reliance on Florida cases concerning the admissibility of a human factors engineer's expert testimony is misplaced. Moreover, the district court's admission or exclusion of expert testimony under Fed.R.Evid. 702 is reviewable only for abuse of discretion. *E.g., Taylor v. Ouachita Parish School Board,* 648 F.2d 959, 970 (5th Cir. 1981); *Vallot v. Central Gulf Lines, Inc.,* 641 F.2d 347, 350 (5th Cir. 1981); *Perkins v. Volkswagen of America, Inc.,* 596 F.2d 681, 682 (5th Cir. 1979); 3 *Weinstein's Evidence* ¶ 702[02], at 702–12 (1981).

Garwood argues that the expert's deposition would have provided the jury with a helpful psychological evaluation of the effect on Garwood's conduct (1) of the available light on the day of his injuries, (2) of his nearsightedness, and (3) of the allegedly deceptive quality of the water. As to the available light, the expert's deposition reveals that in forming his opinion, he was aware only of the temperature, humidity, and time of day. He did not know the sun's position on the horizon, its position relative to Garwood, how bright the sun was, or how much glare was on the water. As to nearsightedness, the expert stated that Garwood "would have the same trouble as anybody else would in terms of seeing distance in the water, but that he might see almost as well. It [the nearsightedness] wouldn't throw him off that much." As to the deceptive quality of the water, International Paper brought out a great deal of information about the pond with which the expert was unfamiliar, including his assumption that the water, in the area of the pond into which Garwood dove was bubbling and rushing, thus obstructing Garwood's view of the bottom. Garwood himself agreed at trial that he could see the bottom of the pond "clearly and distinctly," even though some people were in the water. Finally, toward the end of his deposition, the expert virtually discredited his own opinion by stating "[I]f I were going to [Garwood's] trial, I would never go without checking all the variables that were brought up today." In light of all of these problems with the expert's deposition, we cannot say that the district court abused its discretion in concluding that the deposition would not assist the jury.

For the reasons discussed above, the district court's judgment in favor of the defendants is

AFFIRMED.