**Michael M. GARWOOD, Plaintiff,**

v.

**AMERICAN MOTORISTS INSURANCE COMPANY, et al., Defendants.**

**No. CV 82–0–359.**

United States District Court,
D. Nebraska.

Aug. 16, 1984.

---

**94**

Van Steenberg, Brower, Chaloupka, Mullin & Holyoke, Robert G. Pahlke, Scottsbluff, Neb., for plaintiff.

Harold W. Kay, Kay & Kay, North Platte, Neb., for defendants.

## MEMORANDUM

BEAM, District Judge.

This matter came on for trial on May 17, 1984, in North Platte, Nebraska. Evidence was adduced and the case was submitted for decision upon written briefs in lieu of closing argument. This Memorandum will constitute the findings of fact and conclusions of law required by *Fed.R.Civ.P.* 52(a).

## FACTS

On October 9, 1973, plaintiff Michael Garwood, along with some friends, traveled to Camp Blue Springs near Panama City, Florida, to swim. As a result of diving into a pond of shallow water at the Camp, plaintiff suffered severe, permanent injuries. He commenced an action for damages in the United States District Court for the Northern District of Florida in July of 1976. The named defendants were International Paper Company (International), The Gulf Coast Council, Boy Scouts of America (Scouts) and their respective insurers, including American Motorist Insurance Company (American). In the Florida litigation, both International and the Scouts represented, through pleadings and otherwise, that International owned Camp Blue Springs and that the Scouts leased the premises under a long-term lease. This representation was based, apparently, on the fact that the written lease between the parties was dated September 28, 1973, some eleven days prior to the accident.

However, on August 18, 1978, prior to the Florida trial, plaintiff deposed Leva Woodward Pitts (Pitts), a Florida citizen who lived near the Camp. At that time, Pitts, the part-time Camp caretaker, disclosed that the Scouts were not yet in possession of the Camp at the time of the October 9 accident. Further investigation revealed that the lease had actually been signed by the Scouts at a time subsequent to the accident. Within a few days after the Pitts deposition, the Scouts asked leave to amend their pleadings to allege that they were not, in fact, the lessee. They were permitted to do so. Thereafter, upon motion for summary judgment, the Scouts were dismissed from the Florida litigation. By the time of such dismissal, the statute of limitations precluded the assertion of a claim against any other lessee.

For several years, the Camp had been leased to the Millville Dad's Club (Millville), a Florida non-profit corporation. When it was discovered that the Boy Scout lease postdated the accident, International con-

tended that the Millville lease was in force and effect. Plaintiff apparently did not dispute this contention during the Florida litigation and at the outset of this lawsuit. However, during discovery for this action, a copy of a letter (defendants' Exhibit 131) dated May 29, 1973, from C.W. Mauldin, President of Millville to Fred Snell, an employee of International, was produced. This letter was referred to by Pitts in his August, 1978, deposition (defendants' Exhibit 153:12:18–24). It was, apparently, not sought by counsel for the plaintiff during the Florida litigation. The letter states:

May 29, 1973

Dear Mr. Snell,

In the regular meeting of the Millville Dad's Club on May 15, 1973 the Club voted to relinquish the leas[e] on Camp Blue Springs. We would recommend the Boy Scouts of America be granted the lease. The Club feels it would be of more benifit [sic] to the Scouts for the lease to be in their name rather than work thru the Dad's Club.

We have enjoyed having the lease for many years and working with the Boy Scouts. We would like to thank International Paper Company for allowing us that privilege.

Sincerely,
C.W. Mauldin
President

Plaintiff now contends, in the alternative, that (a) early misrepresentations that the Scouts were the lessee precluded timely assertion of a claim against Millville or that (b) later misrepresentations that Millville was the lessee precluded proof that International was both the owner and occupant of Blue Springs on October 9, 1973.

In any event, plaintiff went to trial in Florida against International and its insurance carrier. A jury verdict was returned in favor of defendants. The matter was appealed to the United States Court of Appeals for the Fifth Circuit. Judgment for the defendants was affirmed by the Circuit Court. *Garwood v. Int'l Paper Co.*, 666 F.2d 217 (5th Cir.1982). The Fifth Circuit stated:

... Garwood does not contest the district court's grant of the [Scout's] motion to amend or the district court's grant of summary judgment in the [Scout's] favor.

*Id.* at 219.

The Circuit also said "[w]hen the evidence is viewed as a whole, no reasonable jury could have concluded that International Paper and the [Millville] Dad's Club exercised joint control and possession over the Camp." *Id.* at 221.

## DISCUSSION

By agreement of the parties, the various issues raised in the pleadings in this case were severed for separate resolution. The issue of misrepresentation, if any, was submitted to the Court for preliminary consideration. It was agreed that other issues of fact would or could be submitted to a jury, if necessary, depending upon the outcome of this initial phase of the case.

The elements of fraudulent misrepresentation are essentially the same in Nebraska and Florida. Since all but the initial contact with regard to the Boy Scout lease took place in Florida, the law of Florida will be applied.

"Under Florida law the plaintiff in a fraud action must prove (1) that the defendant falsely represented a specific material fact; (2) that the defendant knew, or should have known, that the representation was false, or that defendant made the representation without knowledge of its truth or falsity; (3) that the defendant intended to induce the plaintiff to act on the representation; and (4) that the plaintiff was [damaged] while acting in reliance on the representation." *Banco Nacional de la Vivienda v. Cooper*, 680 F.2d 727, 730 (11th Cir.1982).

First, we deal with plaintiff's contention with regard to the Boy Scout lease. Although there may be valid argument as to elements (1), (3) and (4), this issue can be decided by consideration of the evidence adduced with regard to element (2) only.

**96**

Such evaluation dictates that this claim must be denied.

The United States Court of Appeals for the Fifth Circuit, applying Florida law, stated in *Hauben v. Harmon*, 605 F.2d 920, 923 (5th Cir.1979) as follows:

Under certain circumstances, an innocent misrepresentation of a material fact, relied on to another party's detriment, is grounds for rescission of a contract (citations omitted).

This rule is an exception to the usual requirement that knowledge and intent to defraud must be proven. *Id.* at 924. The Fifth Circuit illuminated the application of the Florida fraud rule in *Cameron v. Outdoor Resorts of America, Inc.*, 611 F.2d 105 (5th Cir.1980) when it said "... Florida law is satisfied by a negligent representation 'made under circumstances in which the representor ought to have known ... of the falsity thereof.'" *Id.* at 106.

■ The evidence in this action indicates that International, in good faith, thought that the Scouts were renting the Camp on October 9, 1973. When the deposition of Pitts was taken in 1978, International became aware of the mistake. To find that International, under the circumstances had a duty to go beyond the inquiry it had made at the outset of the action would stretch the scienter requirement in a fraud action, even as attenuated as it may be in Florida, beyond the realm of reason. Such a conclusion is buttressed by the opinion of the District Court of Appeals of Florida in *Alexander/Davis Properties, Inc. v. Graham*, 397 So.2d 699 (Fla.Dist.Ct.App.1981). The Florida Court more completely defined element (2) as follows:

(2)(a) a knowledge of the representor of the misrepresentation, or

(b) representations made by the representor without knowledge as to either truth or falisty, or

(c) representations made under circumstances in which the representor ought to have known, if he did not know, of the falsity thereof.

*Id.* at 706.

In the present case the evidence belies a known misrepresentation. No representa-

tion was made without an inquiry as to its accuracy. In addition, under the circumstances, International had no particular reason or duty, prior to 1978, to extend its search for a lessee to someone other than the Boy Scout Council.

As an epilogue, the Court notes that perhaps the Scouts should not have been permitted to exit the Florida action. *See Jones v. Ambler Quarry, Inc.*, 64 F.R.D. 696, 698 (E.D.Pa.1974). That issue, however, was long ago decided, without appeal by the plaintiff, by the United States District Court for the Northern District of Florida.

■ The next inquiry considers the issue of relinquishment of the lease by Millville. Given the evidence adduced, the Court concludes that there was no misrepresentation in this regard and that the representation that was made was not relied upon by the plaintiff.

It can be persuasively argued that both the Florida District Court and the Fifth Circuit Court have previously decided that Millville was the lessee. This decision was made when the courts concluded that International was not in joint control or possession of the Camp with Millville at the time of the accident. *See Garwood*, 666 F.2d at 221. In this regard, it is noted that plaintiff explored the possibilities of a lapse of the Millville lease prior to the Florida trial. At the time of the Pitts deposition, the following questions and answers were propounded and given:

Q. Was there a period of time when the Millville Dad's Club lease ran out before the Boy Scouts lease became effective?

A. No, we, we'd only had it leased about, I believe about 16 years, something like that. I don't remember just how many years, I don't remember just when, I think it was in '58 and there was about, I think somewhere about four years ago they turned it over to the scouts, I'm not sure just how long ago that's been.

Q. So, between the Millville Dad's Club and the Boy Scouts there weren't any other leasers?

A. No, I don't think so.

Q. Do you know if there was a period of time there after the Millville Dad's Club lease ran out before the Boy Scouts took it over or was it one right after the other?

A. I don't think so, not that I know of.

Q. Do you mean by that that you don't think that there was anybody—

A. I don't think there was any period of time there.

Q. I'm looking to see if there was a gap in the time sequence.

A. Well, I know, I do remember that the chairman of the club, they had a letter from International that we would turn our lease over to them, that they would let the Boy Scouts have it and we just wrote them, he wrote them a letter that we were turning it back, I don't know just whether there was a period in there or not before they—

Q. Could there have been a period of time in there?

A. There could have been a short time, very short time, maybe a couple months, maybe a month or two I don't know.

Defendants' Exhibit 153 at 11–13.

Accordingly, it is doubtful that plaintiff is in a position to contend that total reliance was placed upon the representations made by International as to the identity of the lessee of the property.

Plaintiff contends that the newly discovered letter (defendants' Exhibit 131) proves that Millville had relinquished possession of the Camp to International. Plaintiff further contends that the representation by International that Millville was the lessee on October 9, 1973, if false, precluded Mr. Garwood from receiving a trial which included jury instructions defining the proper obligations of an owner in possession of a parcel of real estate. The Court rejects these contentions.

The Millville letter of May 29, 1973 (defendants' Exhibit 131), does not clearly purport to relinquish the Camp lease prior to the expiration of its term. However, C.W. Mauldin, President of Millville in 1973, testified in his deposition that

in the summer of '73 we discussed with the Scouts the lease situation and to our knowledge, at that time, we had given up the lease and the Scouts had, International Paper Company had released it to the Boy Scouts of America. I mean that was, the terms of our lease had run through October of that year, but we opted to just get out of the park business and, and turned it back over to the paper company to, and they in turn, leased it to the Scouts, or that was my interpretation of it.

Plaintiff's Exhibit 73:15:11–19.

The lease (defendants' Exhibit 125) allows the lessor to terminate the lease by giving six months written notice. The lessee is accorded no specific right of cancellation by the lease. If a reciprocal right is implied, the termination date would extend beyond the date of the accident if the May 29, 1973, letter is presumed to constitute the six months written notice. If no reciprocal right is implied, any termination would have required the mutual agreement of the parties to the lease. *Brewer v. Northgate of Orlando, Inc.*, 143 So.2d 358 (Fla.Dist. Ct.App.1962). In either case, the Millville lease continued in force and effect through October 9, 1973.

Plaintiff points to an insurance certificate supplied to International by the Scouts on August 29, 1973, as proof that International had accepted the Millville relinquishment. While this certificate may be evidence that the lease with the Scouts commenced prior to October 9, 1973, it is not adequate proof that International agreed to a relinquishment of the Millville lease prior to the commencement of the Boy Scout lease, which date was an issue of fact litigated and decided in the Florida action.

International contends that it intended a lease to be in existence with Millville or the Scouts during the whole of 1973. Mr. Gardwood contends, on the other hand,

98

that a "gap" occurred. There is no dispute, however, that a Boy Scout Camporee occurred at Blue Springs in late October, subsequent to Mr. Garwood's injury. There is no evidence that International sponsored or supervised this event. There is evidence that Mr. Pitts, the Millville caretaker, was present to discuss maintenance problems with Boy Scout officials. There is further evidence that F. Willard Vickery, a Boy Scout executive, in late October or early November 1973, mentioned the retention of Mr. Pitts to perform caretaker services for the Boy Scouts. *See* defendants' Exhibit 147. From this, it must be concluded that Millville was still participating in the operation of Camp Blue Springs through the activities of its caretaker Pitts, as late as October 26, 1973, notwithstanding Mr. Mauldin's deposition testimony. Such facts derogate the contention that the May 29, 1973, letter functioned as an effective relinquishment of the lease or that the parties mutually agreed to such a relinquishment prior to the October 9, 1973, accident.

Since the plaintiff has not established actionable misrepresentation as a predicate to its other claims, this action should be dismissed. An order will issue contemporaneously herewith in accord with this Memorandum opinion.