Filed 4/21/16  Lightbourn v. Casa Del Mar CA2/4

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION FOUR

|  |  |
|---|---|
| WENDY LIGHTBOURN,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>CASA DEL MAR et al.,<br><br>    Defendants and Respondents. | B263926<br>(Los Angeles County<br>Super. Ct. No. BC511081) |

APPEAL from a judgment of the Superior Court of Los Angeles County, Michael J. Raphael, Judge.  Affirmed.

DeWitt Algorri & Algorri, William N. McMillan, Carolyn L. Tan and Ernest P. Algorri for Plaintiff and Appellant.

Pollard Mavredakis Cranert Crawford and Paul C. Kwong for Defendants and Respondents.

Appellant Wendy Lightbourn brought suit against respondents Neptune's Walk LLC, doing business as Casa Del Mar, and the Edward Thomas Hospitality Corporation, owners of the Casa Del Mar Hotel in Santa Monica, for injuries that occurred on the premises of the hotel. The trial court granted respondent's motion for summary judgment, finding no causation. Appellant contends the trial court erred in finding that respondents negated that element of her claim, and that it abused its discretion in accepting the opinion of respondent's expert on the subject, while giving no credence to that of appellant's expert. Finding no legal error or abuse of discretion, we affirm.

## FACTUAL AND PROCEDURAL BACKGROUND

A. *Appellant's Complaint and Deposition*

Appellant allegedly sustained personal injuries after slipping and falling on a seven-step marble staircase at the Casa Del Mar Hotel in December 2012.[1] Appellant contended respondents "negligently owned, maintained, cleaned, controlled, possessed, managed, designed, constructed, supervised, and operated" the Hotel and its fixtures, such that they were "in a defective and dangerous condition, with no warning given . . . ."

At her deposition, appellant testified that she was descending the staircase, at the time of the incident. She was wearing pumps she described as having three-inch heels, excluding the platform portion of the shoe. She stated that immediately before she slipped, she noticed a passing family and commented about them to her husband, who was walking behind her. Asked where she was looking at the time of the fall, appellant answered she did not know, that she "may have" turned to

---

[1] Appellant later stated that she suffered a fractured ankle, which required surgery to repair.

look at her husband, but that turning to look behind her was not something she would normally do while walking down stairs. Appellant testified that her foot "slid[] on the stair[s]," moving "to the side," away from the banister, which was on her right. She said her foot did not go forward.

B. *Respondents' Motion for Summary Judgment*

Respondents moved for summary judgment. Although the complaint was not specific about the nature of the alleged defect in the subject staircase, respondents' counsel asserted that he had been informed by appellant's counsel that the claim was based on the failure of the staircase to conform to the applicable building code regarding variations in the tread depth of the individual steps.[2]

In support of their motion, respondents presented the declaration of safety engineer Taryn Johnson. Johnson's curriculum vitae included her 1981 bachelor of science degree in industrial engineering/management and masters of science degree in safety engineering. Her professional background included "slip/trip and fall analysis" and "human factors analysis," as well as construction safety and building code compliance. Johnson stated she had "inspected and evaluated thousands of stairways and the applicable building codes," and had "evaluated the mechanics of human gait while ascending and descending stairways." Johnson expressed the opinion that "[l]oss of balance due to the tread depth of steps does not cause the foot to slide to the left or to the right. [¶] . . . If [appellant] had lost her balance due to the tread depth, her foot would have rolled over the tread nosing, giving her the sensation that her foot slipped in a forward direction." She further opined: "The slide to the left indicates an offloading of body weight or the

_____

[2] Appellant did not dispute that description of her claim in her opposition papers, and does not contest it on appeal.

3

improper placement of the foot on the tread surface. This was likely caused by instability of the estimated 4-inch high heel and turning to speak to her husband." Johnson explained that her opinion about the cause of appellant's slip and ensuing injury was based on the following factual assumptions, formed from reading appellant's deposition: (1) appellant was wearing pump style shoes, with a four inch heel "when adding the platform height"; (2) immediately before she slipped, appellant was looking at a passing family and commenting about them to her husband; and (3) appellant's left foot slipped away from the banister, to the left.

C. *Appellant's Opposition*

In her opposition, appellant did not dispute that her claims were based on the contention that the tread depth of the steps of the staircase failed to conform to the applicable building code. She did not controvert her deposition testimony that her left foot "didn't go forward. It [slid] to the side[,] [¶] . . . away from the banister." Nor did she add any further information about her fall. She disputed that the height of the heels she was wearing was four inches when added to the shoe's platform, stating that although she had testified her heels were three inches, there was no evidence in the record about the height of the platform. She also disputed that there was any evidence establishing she was looking at her husband when she fell.

Appellant objected to the opinions expressed by respondents' expert concerning the type of fall expected from a variance in tread depth, and the likely cause of her foot sliding to the left. She contended Johnson expressed improper opinions, and that her opinions lacked foundation and were the result of speculation. She further contended respondents' expert was unqualified to render

4

an opinion concerning the conclusions to be drawn from appellant's foot sliding to the left as she was not an expert in biomechanics.[3]

In her opposition, appellant presented evidence that the staircase at issue had seven steps. The tread depth on the fourth step was 11-1/4 inches, one inch deeper than the two steps above it and the one below it, and 1-1/4 inch deeper than the first step's tread. The bottom stair was also 11-1/4 inches.[4] Appellant also presented the declaration of Ivan Insua, a licensed general contractor and architect, knowledgeable about the Uniform Building Code (UBC). According to Insua, the UBC provides that "[t]he greatest tread depth within any flight of stairs shall not exceed the smallest by more than 3/8 inch" when "measured horizontally between the vertical planes of the foremost projection of adjacent treads and at a right angle to the tread's leading edge," and that good design principles required that the design of facilities used by the public "be simple and intuitive," and that their use be "easy to understand" and "consistent with user expectations and intuition." As there was a 1-1/4 inch difference between the top step's tread and the tread of the fourth and bottom steps, the staircase at issue "exceed[ed] the allowable variation between the smallest and longest by 3[-]1/3 times." According to Insua, the staircase "represent[ed] a violation of applicable building code(s) and [was] unsafe for the use, safety and welfare of the general public." Insua's declaration concluded: "In my professional opinion as an architect and general contractor licensed in the State of California, the cause of the injury was directly a result of

---

[3]     "Biomechanics" has been described as the application of engineering principles to the human body (*People v. Duenas* (2012) 55 Cal.4th 1, 18; *People v. Roehler* (1985) 167 Cal.App.3d 353, 369) or the study of the effect of forces on organic bodies (*Romine v. Johnson Controls, Inc.* (2014) 224 Cal.App.4th 990, 998).

[4]     Overall, there was a 1-1/4 inch difference between the top stair (10 inch tread depth) and the fourth and bottom stairs (11-1/4 inch tread depth). The risers -- the vertical piece that joins the stairs -- were all 5-1/2 inches.

5

the unsafe condition [of the staircase]. [Appellant] lost her balance due to the extreme variance in the tread depth."

D. *Reply*

In their reply, respondents objected to Insua's declaration, contending he "offers no theories or facts to support his contention that the alleged code violations caused or contributed to the subject accident. He merely alleges violations and then states that the violations caused the subject accident without providing a basis for such a conclusion."

E. *Trial Court's Rulings*

The trial court sustained respondents' objection to Insua's declaration, explaining that his opinion was "not supported by reasoned explanation." Specifically, "Mr. Insua does not explain the relationship between the tread depth variation and why or how [appellant] would lose her balance as a result. . . . He does not opine as to why tread depth variation requires a minimum variation from a safety standpoint." Moreover, the court stated it was disinclined to credit Insua's opinion because he was "an architect only[,] . . . not a safety engineer."

The court overruled some of appellant's objections to Johnson's declaration, sustaining others. In particular, it overruled her objections to Johnson's opinion that "[l]oss of balance due to the tread depth of a step does not cause the foot to slide to the left or to the right"; "[t]he slide to the left indicates an offloading of body weight or the improper placement of the foot on the tread surface"; and "[i]f [appellant] had lost her balance due to the tread depth, her foot would have rolled over the tread nosing, giving her the sensation that her foot slipped in a forward direction." The court sustained appellant's objections to Johnson's opinion that "[appellant] likely turned toward [her husband] when she spoke to him just before

6

she slipped" and "[t]his [appellant's slip] was likely caused by instability of the estimated 4-inch high heel and turning to speak to her husband." With respect to the objection that Johnson lacked the necessary qualifications, the court noted that appellant's own proffered expert had no expertise in biomechanics, and, unlike respondents' expert, had provided no reasoning to support his opinion that the design of the steps contributed to the fall. In the court's view, Johnson's opinion made "complete . . . sense": "[If] the stair is a little longer than you think it is or a little shorter tha[n] you think it is[,] [y]ou're going to fall forward . . . ."

On the merits, the trial court held that the fact the staircase was not code compliant did not establish negligence per se, in the absence of evidence establishing that the noncompliance was the proximate cause of appellant's injury. The court pointed out that appellant was descending at the time, did not know which step she was on when she slipped, and that the first three steps were all built to code. The court concluded that respondents had "negate[d] causation," that appellant had put forward no evidence to refute respondents' showing, and that it appeared from the record that "even giving all the inferences possible to [appellant,] that there's no way that [she] can show . . . causation."

The court granted respondents' motion for summary judgment. Its order stated: "[Respondents'] evidence is sufficient to shift the burden of proof to [appellant] to create a triable issue of fact. [Citation.] [Appellant] has not proffered competent, admissible evidence sufficient to controvert the issue of causation. [Appellant's] expert's declaration on that issue is objectionable as it lacks foundation. [Citation.] [¶] [Appellant's facts supportive of causation] are not proved as these facts rely on the inadmissible opinion of [appellant's] expert." Judgment was entered in favor of respondents. This appeal followed.

7

**DISCUSSION**

A. *Standard of Review*

"Summary judgment is granted when a moving party establishes the right to the entry of judgment as a matter of law.  [Citations.]  '"The purpose of the law of summary judgment is to provide courts with a mechanism to cut through the parties' pleadings in order to determine whether, despite their allegations, trial is in fact necessary to resolve their dispute."'  [Citations.]" (*DuBeck v. California Physicians' Service* (2015) 234 Cal.App.4th 1254, 1263-1264, quoting *Mitchell v. United National Ins. Co*. (2005) 127 Cal.App.4th 457, 467.)  When a defendant moves for summary judgment, "'its declarations and evidence must either establish a complete defense to plaintiff's action or demonstrate the absence of an essential element of plaintiff's case.  If plaintiff does not counter with opposing declarations showing there are triable issues of fact with respect to that defense or an essential element of its case, the summary judgment must be granted.'" (*Saldana v. Globe-Weis Systems Co*. (1991) 233 Cal.App.3d 1505, 1510-1511, quoting *Gray v. America West Airlines, Inc*. (1989) 209 Cal.App.3d 76, 81.)  "'On appeal from a summary judgment, an appellate court makes "an independent assessment of the correctness of the trial court's ruling, applying the same legal standard as the trial court in determining whether there are any genuine issues of material fact or whether the moving party is entitled to judgment as a matter of law."'" (*DuBeck v. California Physicians' Service*, *supra*, 234 Cal.App.4th at p. 1264.)

In our review, we consider "all of the evidence the parties offered in connection with the motion (except that which the court properly excluded) . . . ." (*Merrill v. Navegar, Inc*. (2001) 26 Cal.4th 465, 476.)  The evidence presented by the party opposing summary judgment and the reasonable inferences therefrom are accepted as true. (*Villacres v. ABM Industries Inc*. (2010) 189 Cal.App.4th 562, 575.)  But it is "not enough [for the opposing party] to produce just some

8

evidence"; the evidence must be "of sufficient quality to allow [a] trier of fact to find the underlying fact in favor of the party opposing the motion for summary judgment." (*McGonnell v. Kaiser Gypsum Co*. (2002) 98 Cal.App.4th 1098, 1105; accord, *Casey v. Perini Corp*. (2012) 206 Cal.App.4th 1222, 1239; *Whitmire v. Ingersoll-Rand Co*. (2010) 184 Cal.App.4th 1078, 1093.) "When the moving party produces a competent expert declaration showing there is no triable issue of fact on an essential element of the opposing party's claims, the opposing party's burden is to produce a competent expert declaration to the contrary." (*Bozzi v. Nordstrom, Inc*. (2010) 186 Cal.App.4th 755, 761-762.)

      B. *Analysis*

The owner of a commercial establishment, while not the insurer of the safety of its patrons, "does owe them a duty to exercise reasonable care in keeping the premises reasonably safe." (*Ortega v. Kmart Corp*. (2001) 26 Cal.4th 1200, 1205.) Failure to exercise due care may lead to liability in negligence, which requires proof of duty, breach, causation and damages. (*Ibid*.)

No inference of negligence can arise from the mere fact that a plaintiff slipped and fell on a staircase located on a defendant's premises. (*Darrach v. Trustees of S. F. County Medical Assn*. (1953) 121 Cal.App.2d 362, 366; *Harpke v. Lankershim Estates* (1951) 103 Cal.App.2d 143, 145; see *Brown v. Poway Unified School Dist*. (1993) 4 Cal.4th 820, 826 ["Experience teaches that slips and falls are not so likely to be the result of negligence as to justify a presumption to that effect."].) However, proof that a property owner violated a statute or regulation may give rise to a presumption of negligence in specified circumstances under the doctrine of negligence per se. (Evid. Code, § 669; *Elsner v. Uveges* (2004) 34 Cal.4th 915, 927; *Gravelin v. Satterfield* (2011) 200 Cal.App.4th 1209, 1218; see *Ritter & Ritter, Inc. Pension & Profit Plan v. Churchill Condominium Assn*. (2008)

9

166 Cal.App.4th 103, 119 [presumption of negligence may arise whether law violated is state statute, safety order, administrative regulation or local building code provision].)

Under the doctrine of negligence per se, "'[n]egligence may be presumed if (1) the defendant violated a statute [or other provision]; (2) the violation proximately caused injury to the plaintiff; (3) the injury resulted from an occurrence which the statute [or other provision] was designed to prevent; and (4) the plaintiff was one of the class of persons for whose protection the statute [or other provision] was adopted. [Citations.]'" (*Reyes v. Kosha* (1998) 65 Cal.App.4th 451, 462-463, quoting *Nowlon v. Koram Ins. Center, Inc*. (1991) 1 Cal.App.4th 1437, 1441-1442.) In a negligence per se action, it is not enough for the plaintiff to establish the violation of a building code or other provision; he or she must also establish "a substantial probability that the plaintiff's injury was caused by the violation . . . ." (*National Council Against Health Fraud, Inc. v. King Bio Pharmaceuticals, Inc*. (2003) 107 Cal.App.4th 1336, 1347, citing *Haft v. Lone Palm Hotel* (1970) 3 Cal.3d 756, 765; see, e.g., *Hazelwood v. Gordon* (1967) 253 Cal.App.2d 179, 180-181 [no liability for steepness of staircase, variations between steps, or lack of code compliance where evidence established plaintiff's foot slipped immediately as it touched the first step]; *Blodgett v. B.H. Dyas Co*. (1935) 4 Cal.2d 511, 513 [no liability for absence of handrail required by ordinance where its absence did not cause plaintiff's fall or ensuing injuries].)

Establishing the element of causation requires a showing that the defendant's breach was a substantial factor in bringing about the plaintiff's harm. (*Ortega v. Kmart Corp*., *supra*, 26 Cal.4th at p. 1205.) The plaintiff "'need not prove causation with absolute certainty,'" but must "'"'introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a cause in fact of the result.'" [Citations.]'"

10

(*Garbell v. Conejo Hardwoods, Inc*. (2011) 193 Cal.App.4th 1563, 1569, quoting *Viner v. Sweet* (2003) 30 Cal.4th 1232, 1243.) "'A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.'" (*Ortega v. Kmart Corp*., *supra*, at pp. 1205-1206, quoting Prosser & Keeton, Torts (5th ed. 1984) § 41, p. 269, fns. omitted.)

Causation is generally a question of fact for the jury, but in appropriate circumstances where the facts are undisputed, may be decided as a question of law. (*Ortega v. Kmart Corp*., *supra*, 26 Cal.4th at p. 1205; *Phillips v. TLC Plumbing, Inc*. (2009) 172 Cal.App.4th 1133, 1139.) In moving for summary judgment, respondents presented the undisputed testimony of appellant that her left foot slid to the left, away from the banister, when she lost her balance and slipped on the staircase. She expressly denied that her foot went forward. Respondents also presented the declaration of an expert who stated that loss of balance on a staircase due to variance in tread depth would cause the foot to roll over the tread nosing -- to move in a forward direction, not to the side. This was sufficient to negate causation and shift the burden to appellant to present countervailing evidence.[5]

Appellant challenges Johnson's qualifications to competently reach the opinions she expressed in her declaration, and contends the opinions were "speculative and foundationless." Evidence Code section 720 permits a person to testify as an expert "if he [or she] has special knowledge, skill, experience,

---

[5]     As the trial court observed, even without regard to the evidence presented by respondents, appellant was unlikely to be able to establish causation under the circumstances: she did not know which step she slipped on, and the first three steps were code compliant. A trier of fact would have been required to rely on speculation to find that UBC noncompliance caused appellant to slip.

training, or education sufficient to qualify him [or her] as an expert on the subject to which his [or her] testimony relates." The trial court is the gatekeeper, having the power to decide whether to exclude or allow expert testimony (*Sargon Enterprises, Inc. v. University of Southern California* (2012) 55 Cal.4th 747, 771-772), and "'is given considerable latitude in determining the [expert's] qualifications . . . .'" (*People v. Cooper* (1991) 53 Cal.3d 771, 813.) An expert opinion may not be based on speculation; however, appellate courts also give "'wide latitude to trial courts in determining whether the matters relied upon by experts in forming opinions are too speculative.'" (*Thai v. Stang* (1989) 214 Cal.App.3d 1264, 1276.) The test applied on appeal is whether the trial court properly exercised its discretion and whether the expert disclosed sufficient knowledge on the subject to warrant admission of the opinion into evidence. (*Redevelopment Agency v. First Christian Church* (1983) 140 Cal.App.3d 690, 703.) This court may find error in the trial court's admission of expert testimony "'only if the witness "'*clearly lacks* qualification as an expert.'" [Citation.]'" (*People v. Singleton* (2010) 182 Cal.App.4th 1, 21.)

With respect to her qualifications, Johnson was a safety engineer with over two decades of experience. She had both undergraduate and graduate degrees in engineering, including a masters of science degree in safety engineering. Her professional experience included safety engineering analysis, slip/trip and fall analysis, human factors analysis, and occupational safety and building code compliance.[6] She stated she had "inspected and evaluated thousands of stairways"

---

[6] "'Human factors'" is a field "devoted to optimizing human performance and reducing human error" by studying "'interaction and interfacing of . . . man, machine and media'" (*Kelly v. U.S.* (9th Cir. 2001) 241 F.3d 755, 758), or "how people see, hear and perceive things and their reactions thereto . . . ." (*Westbrooks v. California* (1985) 173 Cal.App.3d 1203, 1209.) "Considering all of the environmental data available to an

*(Fn. continued on next page.)*

12

and "evaluated the mechanics of human gait while ascending and descending stairways." This was sufficient to establish her expertise in the areas of slip and fall, human gait, and the likely results of unsafe facilities design. The court's conclusion that she was qualified to render an opinion on the cause of appellant's fall was not an abuse of discretion.

As to appellant's contention that Johnson's opinion was speculative and lacked "reasoned explanation," we disagree. Johnson explained that a loss of balance occasioned by a variation in tread depth would not cause a foot to slide left or right; rather the foot would roll over the tread nose, creating a sensation of forward movement. The explanation was clear to the court, which observed that it made sense that a person descending a staircase anticipating a longer or shorter tread would fall forward. We find no abuse of discretion in the trial court's determination that Johnson's declaration was sufficiently detailed to be admissible on the issue of causation.[7]

---

individual in a given situation, as well as that individual's state of mind at the time, a human factors engineer purports to render an opinion on the individual's probable resulting conduct." (*Garwood v. International Paper Co*. (5th Cir. 1982) 666 F.2d 217, 222.) Human factors analysis is used to identify and reduce risk created by design. (*Ford v. Polaris Industries, Inc*. (2006) 139 Cal.App.4th 755, 761.)

[7]     Appellant contends her position is supported by the decision in *Wilson v. J.P. Allen Co*. (C.D. Cal. 2014) 57 F.Supp.3d 1249, a case involving injury caused by a slip and fall from an improperly designed curb. There, plaintiff's expert testified that the plaintiff's deposition testimony describing his body's movement during his fall was "just the opposite" of the movement the expert believed the improper design of the curb would cause. (*Id*. at p. 1258.) In opposing a defense motion for summary judgment, the plaintiff submitted a declaration, changing his description of the incident to conform to the expert's testimony. (*Id*. at p. 1259.) In denying the motion for summary judgment, the court did not, as appellant suggests, decline to credit the expert's testimony or find it represented an improper opinion. Rather, the court found that the plaintiff's declaration was not a sham and created a triable issue of fact. (*Id*. at p. 1261.) Unlike the plaintiff in *Wilson*, appellant did not seek to modify her deposition testimony.

13

Appellant suggests the declaration she presented was sufficient to raise a triable issue of fact. Again, we disagree. As the trial court observed, Insua, an architect and general contractor, was not a safety engineer. Moreover, "an expert's opinion rendered without a reasoned explanation of why the underlying facts lead to the ultimate conclusion has no evidentiary value because an expert opinion is worth no more than the reasons and facts on which it is based." (*Bushling v. Fremont Medical Center* (2004) 117 Cal.App.4th 493, 510.) Appellant's expert merely stated that the variance in tread depth represented a code violation and that plaintiff "lost her balance due to the extreme variance in the tread depth," without providing an explanation of how the tread variation might have caused the slip and fall appellant described in her deposition. The court's finding that this opinion had no evidentiary value and was insufficient to raise an issue of fact on causation was reasonable. (See *id*. at p. 502 [plaintiff's expert did not create issue of material fact by simply stating it was "more probabl[e] than not" that plaintiff's injury resulted from trauma during surgery without providing explanation].)

Finally, appellant contends Johnson's opinion was improperly based on facts not supported by the evidence, specifically, the height of appellant's shoes and the direction in which she was looking at the time she slipped. As the record reflects, the court sustained appellant's objections and discounted Johnson's opinion that the sideways slip was due to the height of the shoes or appellant's failure to look ahead during her descent. However, these opinions were separate from the opinion concerning the direction of the movement when a fall is precipitated by tread variance. The court could reasonably rely on the admissible portion of the declaration while discounting the portions it found speculative or unsupported by the evidence.

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded their costs on appeal.

**NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS**


MANELLA, J.


We concur:



EPSTEIN, P. J.



COLLINS, J.